BLAINE S. VILES *vs.* KENNEBEC LUMBER COMPANY.

Kennebec.    Opinion April 30, 1919.

*General rule as to plaintiff recovering under an account in quantum meruit where there has been a special contract entered into between the parties.    Right of defendant to offer evidence of his damages in such an action under plea of general issue. Rule of pleading where plaintiff seeks to recover upon his special contract and defendant seeks to have recoupment on account of failure to perform contract according to terms.*

This case is in the form of an action in assumpsit, upon an account annexed, and a quantum meruit, with a specification that the plaintiff would offer in proof of the latter count the items and charges enumerated in the account annexed.

The plea was the general issue.    The defense offered was a special contract, and alleged breach thereof and a deduction in damages therefor.    The case was tried upon the theory; (1) that no claim for a deduction in damages could be made, under the general issue; (2) that the plaintiff could recover, regardless of any breach of contract, what the logs delivered were reasonably worth; (3) that the contract was fully performed.

The plaintiff offered the contract.    The defense then proceeded upon the theory that, while the plaintiff may have delivered the quantity of logs alleged, he did so by virtue of a contract with the defendant, by which he agreed to deliver a much larger quantity than was actually furnished, and that in consequence of such shortage of delivery the plaintiff was guilty of a breach of his contract, and the defendant was thereby subjected to damages.

As this case finally shaped up, but two issues are before this court.    (1) Was the defendant under its plea entitled to show a breach of contract and claim a reduction of the plaintiff's verdict by reason of damage, if any, it might have sustained on account of the breach?    (2) Was the jury justified under the law and evidence in finding a special verdict of performance?

*Held:*

(1)　That the plaintiff was entitled to show a reduction of damages on account of the breach of contract, if there was one, under the pleadings as they were formulated for the trial.

(2)　That the verdict of the jury was based upon an alleged modification of the special contract.

(3)　That the burden of proving a modification was on the plaintiff.

(4)　That the jury was not justified under the law and evidence in their verdict that the contract was performed.

(5)　That the verdict should be set aside.

(6)　That the question of damages was thereby left open.

(7)　That the instructions upon the mode of procedure involving the measure of damages was erroneous.

Action of assumpsit with count annexed and also a general count of quantum meruit under which the plaintiff alleged that he would prove the items and charges set out in the account annexed. Defendant filed plea of general issue. Verdict for plaintiff in the sum of $13,736.23. Defendant filed exceptions to certain rulings of presiding Justice in regard to offering proof of damages caused to defendant by plaintiff's failure to carry out the terms of the special contract, which was offered in evidence and which was the basis of the action, defendant claiming proof of damages could be offered under plea of general issue. Exceptions sustained.

Case stated in opinion.

*W. R. Pattangall* and *H. E. Locke,* for plaintiff.

*Williamson, Burleigh & McLean,* for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, WILSON, DEASY, JJ.

SPEAR, J.　This case is in the form of an action in assumpsit, upon an account annexed, and a quantum meruit, with a specification that the plaintiff would offer in proof of the latter count the items and charges enumerated in the account annexed.

The plea was the general issue. The defense offered was a special contract, and alleged breach thereof and a deduction in damages therefor. The case was tried upon the theory: (1) that no claim for a deduction in damages could be made, under the general issue;

(2) that the plaintiff could recover, regardless of any breach of contract, what the logs delivered were reasonably worth; (3) that the contract was fully performed.

It should be noted that a quantum meruit upon an implied contract and a quantum meruit upon a special contract originate and proceed to a judicial termination upon quite different grounds. A quantum meruit upon an implied contract is not founded upon a breach but upon conditions and circumstances which the law says implies a promise on the part of the beneficiary to pay what in equity and good conscience the services are reasonably worth. There is no fixed standard to which the value of the services may be referred for determination. On the other hand, a quantum meruit, upon a special contract, is founded upon the plaintiff's breach, and "the contract price is the standard by which the damages are to be estimated." *Jewett* v. *Weston*, 11 Maine, page 348. We must accordingly bear in mind, throughout this whole discussion, that we are dealing with a special contract.

A special finding was submitted upon the question of performance, and the jury found in favor of the plaintiff. This finding took care of the question of damages, provided the finding, upon the law and evidence, can be sustained; and of course settles the whole case. The essential part of the contract was as follows: "Memorandum of Agreement, between Boyd & Harvey Company and Blaine S. Viles, Augusta, Maine, parties of the first part and the Kennebec Lumber Company, of Augusta, Maine, party of the second part, for an amount of fir logs to be cut during the winters 1914, 1915, 1916, 1917. Said Boyd & Harvey Company and Blaine S. Viles agree to sell to the Kennebec Lumber Company, about four million (4,000,000) feet to be cut during the winter of 1914-1915, about five million (5,000,000) feet to be cut during the winter of 1915-1916, and about five million (5,000,000) feet to be cut during the winter of 1916-1917." The plaintiff's action is not based upon this contract. His declaration does not mention it. In his action he relied solely upon recovering for the quantity of logs proved to have been actually delivered.

The plaintiff offered the contract. The defense then proceeded upon the theory that, while the plaintiff may have delivered the quantity of logs alleged, he did so by virtue of a contract with the defendant, by which he agreed to deliver a much larger quantity than was actually furnished, and that in consequence of such shortage of

delivery the plaintiff was guilty of a breach of his contract, and the defendant was thereby subjected to damages. The first inquiry is, if there was a breach of contract, was the defendant entitled to show it, and claim the damages resulting therefrom under the plea of the general issue. Because if the defendant could not do this, under that plea, the only issue was the quantity of logs delivered, and their value. Furthermore, if damages could not be shown under that plea, it is evident that the contract and evidence of performance or non-performance were admissible only upon the issue of good faith. But this issue was eliminated by the verdict and we shall have no occasion to further allude to it.

The theory upon which the case was finally submitted to the jury is shown by the following extract from the judge's charge: "The defendant has stated to the court during the trial, and he has urged it to you, that in arriving at that figure of what the plaintiff reasonably deserves to have, if you come to that, he is entitled to have you deduct the damages which the defendant has sustained by reason of the non-performance of the contract. . . . I cannot give you that rule. . . . . But the question for you to decide, if you come to that, would be how much the logs furnished by Mr. Viles this last season were reasonably worth, considering that the remainder, if any, were not furnished, and considering that some saw logs, if you find such to be the fact, were taken out. To put it another way, were the logs that he actually received worth any less because some were not furnished? Were they worth any less because some large trees were taken out, provided that the logs that were left came up to the specification? Not, you see, whether the defendant was left short of logs for his mill. That is not the question; but the question is, did, or does, the plaintiff deserve to recover under that quantum meruit clause, if you come to that, for the logs which he did furnish in good faith under the circumstances disclosed in this case." By the use of the above language the defendant was denied any consideration for the shortage of logs for his mill, on account of the breach of contract and the plaintiff was permitted to recover what the logs which he delivered "were reasonably worth" without any regard to the breach. The shortage, in such a contract, might be very important.

As this case finally shaped up, it is therefore obvious that but two issues are before this court. (1) Was the defendant under its plea entitled to show a breach of contract and claim a reduction of the

plaintiff's verdict by reason of damage, if any, it might have sustained on account of the breach? (2) Was the jury justified under the law and evidence, in finding a special verdict of performance? The first issue presents a question of law. We think it should be resolved in favor of the defendant. It does not involve recoupment as a matter of pleading at all. The course of proceeding to have been pursued in the framing of the issues in the trial of this case is clearly mapped out in *Jewell* v. *Weston*, 11 Maine, page 346. The parties had entered into a special contract for the performance of certain work. The plaintiff brought an action upon quantum meruit. The court say: "Having proved the performance of the labor, they might rest until this proof should be avoided by the defense." How "should it be avoided by the defense?" This is the crucial inquiry as it vitally concerns the matter of pleading. Was it by special plea, or brief statement under the general issue, which only was pleaded? Not at all. The court states how: "It came out in the evidence that the labor was performed under a special contract." This is all that appeared. Nothing further was done or required by way of pleading. Yet the court say: "As soon as it came out in the evidence that the labor was performed under a special agreement, the defendant might securely rest, until the plaintiff had removed the obstacle (the special contract) in one or the other of the modes above suggested." The modes suggested were by proof of performance, or of "deviation" by consent.

These three moves follow in logical sequence under the general issue. No recoupment was pleaded. The contract was not mentioned in any of the pleadings. As above stated, "it came out of the evidence." Yet the contract was admitted for the purpose (1) in "showing what the agreement was;" (2) "as a standard by which the damages were to be estimated." Under the plea of the general issue the court say in regard to the defendant's right to offset his damages, or recoup his damages, or deduct his damages (what you may call the method is immaterial) that: "The contract price would be the rule in case the contract had been performed. But that not having been done, so much was to be deducted as the defendant suffered by reason of its non-performance," and cites *Hayward* v. *Leonard*, 7 Pick., 181, to which allusion will be further made. It is further said: "When a party engages to do certain work according to specification, and does not perform it as specified, what he is

entitled to is the price agreed upon, *subject to the deduction of the sum* which it would take to make it agree with the specification." In other words, the plaintiff cannot claim the benefit of his breach of contract without assuming the accompanying loss. The benefit to the plaintiff and damage to the defendant are parts of one and the same transaction, and are necessarily put in issue in the plaintiff's own pleadings.

That case is based upon the theory, and establishes the practice, that when a party is guilty of a breach of his special contract and sues on a quantum meruit, he must in his suit, make the defendant whole, for damages suffered by the breach, as he is entitled to recover only what the value of his services have been worth to the defendant. "Quantum meruit" means "what he merits." Damages are in issue, not by plea, but by the nature of the plaintiff's action. The moment he brings quantum meruit on a contract, he acknowledges a breach and admits notice that he may have damaged the defendant by such breach. *Gillis* v. *Cobe*, 177 Mass., 584. And the only object of a brief statement, under our present form of pleading, is to give notice of the defense to be made. The rules of special pleading were abolished, and superseded by the general issue and a brief statement, for the express purpose of abrogating the technical forms and permitting notice of defense regardless of form. Substance was substituted for form. Accordingly, the technical requirement being obsolete, actual notice is all that is now required. And when a party is charged with notice of the defense by his own pleadings, it would seem a useless form to require further notice, under the general issue. *McCormick* v. *Sawyer*, 108 Maine, 405.

This is also the well settled law, as will appear from an analysis of *Hayward* v. *Leonard*, 7 Pick., 180, and *Gillis* v. *Cobe*, 177 Mass., 584. Both cases were tried under the general issue, and the former was "the original case" in Massachusetts where it was held that a quantum meruit would lie in case of breach of a special contract. Parker, C. J., on page 184 says: "We think the weight of modern authority is in favor of the action and that upon the whole it is conformable to justice, that the party who has the possession of materials and labor of another shall be held to pay for them so as in all events he shall lose nothing by the breach of contract.

"And yet he (the party guilty of a breach) certainly ought not to gain by his fault in violating his contract, as he may, if he can recover

the actual value. . . . The owner is entitled to the benefit of the contract, and therefore he should be held to pay in damages only so much as will make the price good deducting the loss of damage occasioned by the variation from the contract." It should be observed that "actual value" was precisely what the plaintiff got, under the charge quoted. The court then further say: "But the case was put to the jury . . . . merely on the question whether the house was built pursuant to the contract or not; and if not the jury were directed to consider what the house was worth to the defendant, and to give that sum in damages. We think this is not the right rule of damages. . . . They should have been instructed to deduct so much from the contract price as the house was worth less on account of these departures." A new trial was granted. Just what the logs "were worth to the defendant" was all the plaintiff had to show. We are unable to discover any material distinction between the instructions given in the case at bar and the instructions which were regarded as error in the case just cited. It should be kept in mind that the case cited was tried under the general issue, for we are now discussing the question of pleading, and that under that plea the defendant was allowed to deduct his damage on account of the breach, as we think the defendant was entitled to do in the case at bar. Otherwise the plaintiff might just as well have brought assumpsit upon an account annexed for lumber sold and delivered as upon a quantum meruit on a breach of his own contract. It would seem reasonable that a contract ought to mean something in such a transaction and impose some duty upon the plaintiff, who admits a breach, and asks to recover, not on a contract, but on account of the breach of the contract, for that is just what quantum meruit means in this class of cases.

*Gillis* v. *Cobe*, 177 Mass., 584, illustrates and confirms the doctrine of the opinion above referred to. Every issue raised in the present case was raised in that case and settled in favor of the practice that the defendant was entitled to have his damages deducted from the recovery of the plaintiff, under the plea of the general issue. That was a case of quantum meruit under a special contract. The court referred to the case of *Hayward* v. *Leonard* as the principle of justice upon which such form of action can be sustained. It clearly differentiates between an action on a contract and a quantum meruit on account of breach of the same contract. The first is based upon a strictly legal procedure and requires a special plea in recoupment, or

the equivalent by way of brief statement, or at least notice of what the nature of the defense may be, as held in *McCormick* v. *Sawyer,* 108 Maine, page 406. The second, however, is purely an equitable procedure introduced into Massachusetts practice in "the original case of *Hayward* v. *Leonard,* 7 Pick., 181." Accordingly, prior to 1829 this equitable right was not attainable in Massachusetts. Since then this equitable rule has prevailed upon the principle of equity, under special rules of law.

The Gillis case held that quantum meruit is founded upon the theory, that the action per se is an admission on the part of the plaintiff, that he is guilty of a breach of his contract, and that he seeks to recover, not the contract price, but for whatever benefit he may be able to show his services or his material have been to the defendant. On page 592 it is said: "If he resorts to recovery under the rule of *Hayward* v. *Leonard,* because, being in default in the performance of the contract . . . . he has no rights under it, he has not the same right to recover for the value of the work done and materials furnished by him that a person has who has done work and furnished materials as he has been requested to do. In the latter case it is immaterial whether the result of his work is of any value to defendant or not . . . but one who has done work under a special contract and resorts to a recovery under the principle of *Hayward* v. *Leonard* recovers on the ground, and only on the ground, that the result of his work is of some benefit to the defendant; he comes into court admitting that he has not done what he agreed to do and that he cannot hold the defendant on his promise to pay him the contract price; more than that, he admits that the part, which he has failed to perform, is one, that so far goes to the essence of the contract, that it is a condition precedent to a recovery by him on the contract; for, if the part which he agreed to perform, and did not perform, was of so slight importance, it is not a condition precedent; he can recover the contract price without performing it, and the only advantage which the defendant can take of it is by way of recoupment, or by a cross-action in which the burden was on him, the defendant, to prove the damages he has suffered from its non performance."

It should be noted that the court specifically states what the rule of pleading would require if the action was upon the contract. Then the court proceed: "The only ground, on which a plaintiff, who resorts to a recovery under the principle of *Hayward* v. *Leonard,* is

entitled to recover anything is, that, though, so far as his contract rights are concerned, he is entirely out of court, yet it is not fair that the defendant should go out of the transaction as a whole with a profit at his, the plaintiff's expense, and therefore if the structure, which, for the purposes of a recovery on this ground, he necessarily admits does not come up to the contract requirements in essential particulars, is, nevertheless, a thing of some value, the defendant ought to make him compensation therefor.   That such is the ground in which a recovery can be had in such a case was laid down in the original case of *Hayward* v. *Leonard,* 7 Pick., 181, and has been repeated in the subsequent decisions." To this point many cases are here cited. It is then stated that 12 years before *Hayward* v. *Leonard* it was decided that there could be no recovery on the doctrine afterwards stated at length in that case, if the result of the plaintiff's misdirected work was not a thing of value.   In view of this last statement the court then further say:   "It is plain, therefore, that the plaintiff who seeks a recovery under the principle of *Hayward* v. *Leonard* for work done under a special contract, does not recover on the same ground as that on which a plaintiff recovers, who has done work, as he has been requested to do.   So far as his case travels on that ground, he is out of court; his sole claim to be paid anything is that, if he is not paid, the defendant will profit at his expense; until he has proved that the defendant will in that case profit at his expense, he has not made out a prima facie case to be paid anything, and until he has proved how much that profit will be, his prima facie case is not complete." The court then state that he cannot make out a prima facie case in the regular way by proving the value of his work and materials but "to make out a case for recovery for such work and materials so furnished he must prove how much the result of his work had benefited the defendant, he must prove what the fair market value of the thing produced by his misdirected work is, and, until he has done that, he has not made out even a prima facie case on which he is entitled to recover anything." The court then go on to say with reference to the pleading that "it is immaterial at what stage of the trial the fact appears that the work for which a recovery is sought in a quantum meruit was done under a special contract, which the plaintiffs have failed to prove was performed; when that fact does appear, the contractor who seeks to recover by reason of such work has the burden of proving what the fair market value of the result of his

misdirected work is and unless, and until, he proves that, he does not show himself to be entitled to anything. In such a case, as in all cases where a plaintiff sues on a quantum meruit, there is no question of recoupment; the only question is, How much does the plaintiff deserve, under all the circumstances, and this arises under the general issue." Upon this point several cases are cited. The last quotation, however, concisely settles the question of pleading in this class of cases, and is entirely consistent with the equitable theory upon which quantum meruit is based. Finally the court says the contention of the plaintiffs in this connection comes to this: "While a plaintiff who has done work under a special contract, when suing on a contract, has the burden of proving that he has complied with its requirements, yet, on his failing to sustain that burden he can, by resorting to a count of quantum meruit, and by proving the value of the work done by him (which he failed to prove was a performance of what he agreed to perform), shift the burden of proof and throw on the defendant the burden of proving that he committed a breach of the contract; and that, in this way, he can entitle himself to the value of that work to the same extent as he would have been entitled had that work been done in the manner in which the defendant requested to have it done; and to recover that value unless the defendant goes forward and, by way of recoupment, cuts that amount down by proving that he, the plaintiff, committed a breach of the contract under which the work was done, and that he, the defendant, has suffered damages from that breach and proves the amount of those damages." These contentions were specifically denied in the opinion.

It would appear from this summary that in the Gillis case were made precisely the contentions which were made in the case before us, and especially, that the defendant by way of recoupment must assume the burden of cutting down the amount proved by the plaintiff. This contention, as above seen, was overruled by the court. We have cited this case thus fully because, as before stated, it discusses fully the very foundation upon which quantum meruit is based, the ground upon which the action can be maintained, the procedure which the plaintiff must folllow, the amount to which he is entitled and the pleadings upon which the defendant is authorized to present his side of the case. It will now be seen by comparison that *Jewett* v. *Weston,* decided in the 11th Maine in 1834, was based upon

*Hayward* v. *Leonard* and is in perfect accord with the principles and procedure in this form of action found in the well reasoned opinion just discussed. We have not yet discovered a single opinion which contravenes the reasons, the procedure or the form of pleadings so fully and carefully laid down in the Gillis case.

If we now recur to the ground upon which this phase of the case was put to the jury, we find it to be this, as taken from the final word upon this point from the charge of the presiding Justice, leaving out the intervening and immaterial clauses: "But the question is, Does the plaintiff deserve to recover for the logs which he had furnished in good faith under the circumstances discussed in this case." Yet the court stated the contention of the defendant in this way: "The defendant has stated to the court during the trial and he has urged to you that in arriving at that figure at what the plaintiff reasonably deserves to have, if you come to that, he is entitled to have you deduct the damages which the defendant has sustained by reason of the non-performance of the contract. I say to you, and I have already stated to him that, in my view of the law, under the issue as it is framed here, I cannot give you that rule." The court then states that the reason for not giving the rule is because under the general issue the plaintiff was not entitled to have the issue as to the damages he had suffered on account of breach of the contract considered in connection with the plaintiff's action of quantum meruit. "Not, you see, whether the defendant was left short of logs for his mill; that is not the question." But as before seen, this very question was put in issue by the form of the plaintiff's action.

We therefore conclude that the defendant's contention that he was entitled to claim and show damages for breach, and to have those damages deducted from what the plaintiff was entitled to recover for the logs he actually delivered, was correct and should be sustained. If the case stopped here, exceptions should be sustained and a new trial granted. But while the plaintiff brought his action in the form of quantum meruit, he was permitted to offer evidence upon the question of damages, that the contract was substantially performed, and that no damages followed. The latter question was submitted to the jury for a special verdict and they found in favor of the plaintiff.

While the defendant should have been allowed to reduce the value of the logs actually delivered, by way of damages for breach of con-

tract, yet, if the jury were justified in finding that the plaintiff fulfilled his contract, then, no damages could follow. This question is one of law and fact. The interpretation of the contract we think is a question of law; whether modified, a question of fact. Its language is clear and unequivocal, as to the quantity of logs to be furnished each season. We repeat the paragraph on this question: "Said Boyd & Harvey Company and Blaine S. Viles agree to sell the Kennebec Lumber Company about four million (4,000,000) feet to be cut during the winter of 1914-1915, about five million (5,000,000) feet to be cut during the winter of 1915-1916, and about five million (5,000,000) during the winter of 1916-1917." The word "about" should be understood as limiting all feetage herein considered. We think it was conceded that this was a divisible contract. However this may be, we have no doubt about it. The language makes each season's cut as distinct as though there was a separate contract for each cut, the first 4,000,000 was to be cut during the winter of 1914-1915. The phrase "during the winter" limits the cut and the amount to this particular season. Under the first clause of this contract the defendant was entitled to about 4,000,000 feet. If he got this quantity this clause of the contract was completed. If he got less it was a matter of adjustment. If he got more that also was a matter of adjustment concerning this first season's cut. To cut less or cut more would be a breach by the plaintiff. The plaintiff did cut more. The defendant was not obliged to take it. It did, however, adjust the matter, and left the first clause of the contract satisfied and ended. It agreed to carry the surplus of the first season to the credit of the next season and take 3,800,000 instead of the 5,000,000 specified in the second clause of the contract. This arrangement was mutually agreed upon between the plaintiff and defendant, as the undisputed evidence shows. This settlement included pine as well as fir. The season's operation was closed. All the logs of the 1914-1915 cut were paid for in full, some at a special price, as testified by the plaintiff. This settlement, so far as we can see, resulted in a completed transaction so far as the first clause of the contract was concerned, involving the 1914-1915 cut. The second clause of the contract was precisely like the first except the cut was to be 5,000,000, and "during the winter" of 1915-1916.

As before seen, this quantity was by mutual agreement reduced to 3,800,000, by reason of the surplus of the previous year. "About"

3,800,000 feet was the quantity the defendant was entitled to under this second clause, and second season, of the contract. If it got less it was a matter of adjustment. If he got more it was likewise a matter of adjustment. It was not obliged to take more or less. If the plaintiff gave it more or less he violated his contract. He did furnish more, by 895,643 feet. But this excess was adjusted between the plaintiff and defendant. The defendant took the timber, paid for it and ended this season's transaction. It was a completed matter. That is, if there had not been another season's operation involved, the first and second season's operations would have been mutually and completely settled and ended, except the possible payment of some notes, which of course were rather evidence of a settlement, than otherwise, as the logs had all been delivered, and many at least manufactured. There was no agreement upon this second settlement that any of the surplus logs for the winter of 1915-1916 should be carried over to reduce the cut of the winter of 1916-1917, as had been done in 1914-1915. In the above figures we have regarded the pine as a part of the contract as claimed by the plaintiff. It would therefore appear from the undisputed evidence that the first and second clauses of the contract were carried out and executed as above stated. And that is the way matters stood when the time approached for the performance of the last clause. The third clause called for about 5,000,000 feet to be cut during the winter of 1916-1917. But the plaintiff instead of furnishing about 5,000,000 feet supplied the defendant with only 2,934,855 feet,—a shortage of 2,065,145. But notwithstanding the settlements for the seasons of 1914-1915 and 1915-1916, the plaintiff claims that the contract was so modified that it was made entire instead of divisible, and that instead of regarding the feetage of the first and second operations as separate and completed transactions; the surplus of these operations should be applied to the contract as a whole and reckoned as a part of the total 14,000,000 feet, thereby leaving a shortage on the total feetage of about 1,000,000 feet instead of over 2,000,000 on the last season's cut, as claimed by the defendant. Whether the word "about" ought to take care of a shortage of one million feet in fourteen million, quere?

However this may be, the word "about" cannot take care of a shortage of two million feet in five million. This brings us to the question of fact. The burden is on the plaintiff to show the modification of the contract, as claimed by him. We think the case will

show that the only evidence by which he seeks to assume this burden is a letter from the defendant company to him dated Nov. 28, 1916, just prior to the time of proceeding to the third operation under the terms of the original contract. The letter is as follows: "Mr. Blaine S. Viles, Augusta, Maine. Dear Sir: I trust that you expect to finish up our contract deliveries during the coming year. We are counting on receiving from you next summer the balance of fir to make up the total quantity called for by the contract. Nothing has been said about pine tops this year. Last year there seemed to be some misunderstanding relative to these pine tops. You insisted in settlement that the price should be one dollar above the fir, where my recollection was that the pine were to go in at the same price as the fir and be considered as a part of your contract. As we paid you one dollar per thousand for the pine more than for the fir, it would appear that the pine was an entirely separate trade exclusive of the contract, both with regard to total feetage and deliveries and with regard to price. The pine tops which we had did not work out very satisfactorily, and we would not care for more of them during the coming year, but would like the full quantity of fir due us under contract. I understood Mr. Boyd to say that they should have approximately one million feet of this. Will you please advise how many you are planning on cutting for us? I would also call your attention to the fact that our contract calls for no saw logs to be taken from the fir which we have. Yours truly, Kennebec Lumber Company, S. H. Boardman, Treas." The claim in the letter which the plaintiff says should be construed as a modification is this: "We are counting on receiving from you next summer the balance of fir to make up the total quantity called for in the contract."

Upon cross-examination Mr. Boardman, agent of the defendant company, repeatedly said the surplus of the previous-seasons' cut was not meant to be reckoned on the last operation. But finally this question and answer were obtained. Q. The only way you could get the balance on the total quantity was to subtract what had hitherto been furnished? A. Yes. This was correct as a mathematical problem, of course. Then folllowed this question and answer: "Don't you think that is what you meant when you wrote them to give you the balance? A. That might have been in my mind. These answers were obtained after a long and somewhat grilling cross-examination in regard to the interpretation of the above quoted

clause. Just prior to these questions and answers when the specific question was put, Mr. Boardman answered as follows: "Q. To get the balance you had to find out how much you had? A. Yes. (Another mathematical deduction). A. Wasn't that just what you meant, for him to subtract from the total, what you had had, and furnish you the balance? A. "Not from the total of what he had furnished, Mr. Pattangall." Up to the time of this letter not a word had ever been said between these parties about applying the surplus cut of the two previous seasons to the cut of the last season, nor to the entire contract. Nor was a word in regard to it ever said after the letter until the parties met in court, when the plaintiff raised the question. We do not think that a fair interpretation of this letter, in the light of the circumstances and the testimony, bears out the interpretation the plaintiff seeks to put upon it. In the first place, there was no occasion for the defendant to write at all about the feetage of the contract. The two previous operations had been completed and settled without a word about it and the contract called for about five million. But in the two previous operations a certain amount of pine had been cut which the defendant was not obliged to take, but he had taken it and settled for it. This season the defendant did not want this pine, as a part of his supply.

It is therefore apparent, from reading this whole letter, that the sole occasion and motive for writing was to differentiate between fir which his contract called for and pine which his contract did not call for and which he did not want. The wording "balance of fir to make up," etc., is an awkward way of stating the claim, but read with the rest of the letter its meaning seems clear that the defendant in substance says I want "fir" instead of any "pine" to make up the balance of my contract or to make up the total quantity called for by the contract.

The very next sentence is: "Nothing has been said about pine tops this year" . . . "We would not care for any more during the coming year, but would like the full quantity of fir due us under contract." "Fir" instead of "pine" was the object of this letter. That the plaintiff so understood it both as to "fir" and feetage for 1916-1917, clearly appears from his own testimony. Before he received the letter he was cutting pine as usual for the defendant. Q. Will you tell us about the pine, why you got so little? A. The reason I stopped, on receipt of the letter, or as soon as I could get

up river, I stopped my operation cutting the small pine and put it into this fir mark. This shows what the letter meant. But if there was any doubt, that the plaintiff understood the letter to make no modification, his own testimony, as to the quantity he intended to cut, removes it. Q. What arrangement did you make to get Mr. Boardman fir that winter? (1916-1917) A. Why, I planned to cut Mr. Boardman—how much fir? Q. Yes. A. I planned to cut him about 2,000,000 of fir myself. I talked with Boyd & Harvey, and they expected to cut a million or more, and as I learned that they were getting more I figured they would probably get about 2,000,000. They cut a million of pine, that is, with the pine they cut that winter, and I figured that would fill the contract of 5,000,000.

It is very evident that the plaintiff at this time did not regard this letter as a modification of this contract in regard to the five million feet for 1916-1917, but planned and expected to cut this quantity this season. It is equally evident that Mr. Boardman never intended it as such. Consequently the parties neither understood nor consented to any modification. So far as we are able to determine, the question was first raised in court, after the parties had engaged in a legal controversy. Hence there was no ratification.

We are of the opinion that the plaintiff has not presented any competent evidence, showing a modification of his original contract. The special verdict, based upon such modification, should be set aside. The question of damages was thereby left open. The instructions upon the mode of procedure involving the measure of damages was erroneous.

*Exceptions sustained.*