AARON LEVINE
*vs.*
SANFORD REYNOLDS

Kennebec.   Opinion, August 5, 1947.

*F. Harold Dubord,* for plaintiff.

*Harvey D. Eaton,* for defendant.

SITTING: STURGIS, C. J., THAXTER, MURCHIE, TOMPKINS, FELLOWS, JJ.

TOMPKINS, J.   Action on the case for money had and received by the defendant to the use of the plaintiff, in which

the plaintiff seeks to recover the sum of $351. The jury returned a verdict for the plaintiff in the amount of $244.33. The case comes before the Law Court on defendant's motion for a new trial and on exceptions by the defendant to certain portions of the charge of the presiding justice, and the refusal of the presiding justice to charge the jury in accordance with certain requests by the defendant.

In April 1945 the plaintiff entered into an agreement with the defendant whereby the defendant agreed to sell to the plaintiff ten large heifers, one small heifer, two veal calves, two skimmed milkers, one bull, seven cows, nineteen sheep and a small quantity of hay, for an agreed price of $1,700. Both parties allege an oral contract for the purchase and sale of the animals. The defendant pleaded the general issue and a brief statement setting up as special matter of defense the oral contract which defendant claimed was entered into on the 10th day of April 1945; that it was an entire contract for the sale of a specified number of animals by the defendant to the plaintiff for one entire lump sum; and that the defendant was able, ready and willing to deliver said animals as agreed and repeatedly offered to do so, and repeatedly requested the plaintiff to accept said animals and pay for them; but the plaintiff neglected and refused to accept the animals or complete payment therefor as agreed.

The plaintiff was a cattle dealer and farmer living in the town of Fairfield and the defendant was a farmer living in the town of Winslow, in the county of Kennebec. Some time in April of 1945 the plaintiff called on the defendant and they entered into a conversation relative to selling the cattle and sheep described in the plaintiff's writ. Defendant at the outset wanted $2,000 for the aggregate number of animals, and after some bargaining they arrived at the price of $1,700 by placing a separate price upon the various animals, including a small quantity of hay that the defendant had in the barn. The defendant claimed that the cattle were to be all taken away by the plaintiff within a week

from the 10th of April, being the date on which he claimed the contract was made, and the purchase price paid in full when the defendant came for the animals within the time specified. The plaintiff claimed the bargain was made some time the latter part of April or the first of May. The plaintiff claimed that no time was set for taking the animals; that one of the conditions involved in the contract was that the milch cows were to be taken away after plaintiff was notified by the defendant, who wished to inform his butter customers so that they could buy elsewhere, that he was ready to deliver them. Plaintiff said "Our agreement was I should take the cows after he let his butter customers know." The plaintiff was to take delivery at the farm of the defendant.

The plaintiff paid the defendant $500 on account of the purchase price on the day the agreement was made, and in a day or two after the trade was made the plaintiff called at the farm of the defendant and removed one of the cows, two veal calves, one small heifer and five of the large heifers, leaving a check for $411 with the defendant's wife. Defendant's wife testified that the plaintiff remarked that he would take the rest of the cattle the next Sunday, which would give a week. Three or four days later he took the bull.

Defendant testified that he called the plaintiff on the 26th of April and asked him when he was coming after the rest of the animals, and claimed the plaintiff promised to come after them the following Thursday. This the plaintiff denied. The defendant further testified that he called the plaintiff again after that, and this the plaintiff disputed. Some time in June the plaintiff called by telephone and told the defendant "I am sending a man out to get the cattle," and the defendant then informed the plaintiff that the time had lapsed under the agreement and that he would not deliver the cattle to him.

From the testimony it can be fairly inferred that the trade took place about the 10th of April and that it was

some time the middle of June before the plaintiff notified the defendant that he was coming after the cattle. The sum of $351 as an overpayment for the value of the cattle received by the plaintiff was arrived at by subtracting the bargaining price of each animal as used in arriving at the total purchase price of $1,700, from the $911 that had been paid on account.

The presiding justice gave the jury the following instructions, to which the defendant excepted:

"If you should say, for instance, that the plaintiff should have completed his contract the week after the 10th of April and paid the balance of the $1,700 and failed, but was willing some time in June to carry out his contract and so notified the defendant, and the defendant refused to allow him to have the cattle by saying that the time had gone by when he could have them, then I instruct you that the plaintiff had a right at that time to complete the contract if he had the money to buy. But the defendant may deduct from this $351 such sum as it may have cost him in feed and labor to take care of these cattle during the interim, during the time when you say the plaintiff should have taken the cattle until such time as he did take them.

In other words, I am instructing you that under the evidence it would be unfair for the defendant to unduly enrich himself. If he has received from this plaintiff over and above what the contract calls for, there should be deducted whatever it cost the defendant to carry these cattle, if he did carry them, for an appreciable length of time beyond what you might find the agreement to be."

The defendant says this instruction is an incorrect statement of the law and was highly prejudicial to him, and claims that the question of liability was taken from the jury and they were expressly instructed to find a verdict for the plaintiff. The plaintiff claims that the instruction was correct and, if erroneous, was harmless, and defendant was not prejudiced thereby, because the result of the entire case

was correct and the jury had a proper understanding of the law from the entire charge. There are numerous cases in which it has been held a new trial will not be granted even if instructions are erroneous unless it appears also that they might have been prejudicial to the excepting party. *Russell* v. *Turner*, 59 Me. at 258, and cases there cited. Neither will a new trial be granted where there are erroneous rulings by the presiding justice on abstract principles of law not affecting the truth of the result. *Gordon* v. *Conley*, 107 Me. 291, 292. But where an erroneous instruction is given, or a correct instruction is refused, if the erroneous instruction or refusal may have misled the jury, and the court is not clearly satisfied that under a correct instruction a different verdict could not have been given, or if given could not have been permitted to stand, exceptions thereto must be sustained. *Starkey* v. *Lewin*, 118 Me. 87, and cases there cited; *Colbath* v. *Stebbins Lumber Co.*, 127 Me. 406; *Blumenthal* v. *Serota*, 130 Me. 263.

The plaintiff contends that independently of the instructions under consideration, upon a correct view of the law and the facts, the plaintiff is entitled to retain the verdict. It is not the province of the court when a case is presented by exception, to decide upon its general merits, but to determine whether the law applicable to it was correctly given to the jury. *Miller* v. *Goddard*, 34 Me. 102. This court has always, while considering the matter of retention of benefits in cases similar to the one under consideration, considered the nature of the breach. It has recognized well-defined classes of cases where there has been an endeavor in good faith to perform, substantial performance, and some variance when the work and material was of value and benefited the other party; but where the breach is wilful, purposeful, or in bad faith, no recovery on *quantum meruit* is permitted. *Thurston* v. *Nutter*, 125 Me. at 418, and cases there cited. The plaintiff claims the right of recovery on *quantum meruit* where an express contract exists. The action *per se* is an admission on the part of the plaintiff

that he is guilty of a breach of his contract. *Viles* v. *Kennebec Lumber Co.*, 118 Me. 148. The instruction complained of was on a material issue of law in the case and raised by the pleadings, and not on any abstract principles of law.

The contract was oral, and the defendant claims that it was an entire contract to purchase all the animals described in the plaintiff's writ for a lump sum. The construction of a written contract is a question of law to be decided by the court. But in an unwritten contract it is for the jury alone to determine from all the evidence what was said and done by the parties to a verbal contract, and therefrom to find their intention. *Guptil* v. *Damon,* 42 Me. 271; *Herbert* v. *Ford,* 33 Me. 90.

"As a general rule it may be said that a contract is entire when by its terms, nature and purpose it contemplates and intends that each and all of its parts and consideration shall be common each to the other and interdependent. On the other hand, it is a general rule that a severable contract is one which in its nature and purpose is susceptible of division and apportionment." 17 C. J. S., Contracts, P. 331 Page 785; *Hartford, Conn. Mutual Co.* v. *Campbell,* 95 Conn. 399. "A test of severability which has frequently been applied is to the effect that if the consideration is single the contract is entire, but if the consideration is either expressly or by necessary implication apportioned, the contract will be regarded as severable, although this test will not necessarily prevail over other provisions of the contract showing a contrary intent of the parties. So where the portion of the contract to be performed by one party consists of several and distinct items, and the price to be paid is apportioned to each item according to the value thereof and not as one unit in a whole or a part of a round sum, the contract will ordinarily be regarded as severable; and this rule applies, although a contract may in a sense be entire, if what is to be paid is clearly and distinctly apportioned to the different items as such and not to them as a part of

one whole. However, the fixing of a price per unit for the ascertainment of the compensation for performance of the contract as a whole will not render the contract severable." 17 C. J. S., P. 334, Contracts, on page 790; *Bianchi Bros. Inc.* v. *Gendron,* 292 Mass. 443, 444; *Kahn* v. *Orenstien,* 114 A. 165; *Producers Coke Co.* v. *Hillman et al.,* 90 A. 144.

The question whether this was a severable or an entire contract should have been submitted to the jury. This was not done. This was error because, had the instruction been given, a different result could have been arrived at by the jury. The court stated to the jury that if the "Plaintiff was in default in not completing the contract the week after April 10th, but was willing some time in June to carry out his contract and so notified the defendant, and the defendant refused . . . . . because the time had gone by—then I instruct you that the plaintiff had a right at that time to complete the contract if he had the money to buy." This was an erroneous instruction and prejudicial to the defendant.

After the breach of a contract has given rise to a cause of action, the rights of an innocent party are not affected by an offer to perform by the party who has broken the contract. 6 R. C. L. P. 381 (Contracts). Neither are the rights of the defaulting party (in the absence of a statute) enlarged thereby. To permit a defaulting party to recover on such a theory if the contract was entire (and the question was not submitted to the jury) for part performance, or to permit him to recover on his agreement where he failed to perform, would tend to demoralize all business transactions. This portion of the instruction was prejudicial.

On the question of damages the court arbitrarily assumed that the defendant had been unjustly enriched and that the damage was the difference between the separate prices used in bargaining to arrive at the lump sum of the purchase price, less the cost of the feed and care of the animals left on the defendant's hands while the plaintiff was in default. The question of unjust enrichment was for the jury to deter-

mine from the evidence. The measure of damages, with the question of the nature of the contract whether severable or entire, whether the breach was wilful, purposeful, negligent or in bad faith, was not submitted to the jury. The jury found by their verdict that the plaintiff had broken his contract. Under proper instructions there could have been an entirely different outcome.

The question presented by the defendant in this case is, where a vendor who has contracted to sell personal property under an entire contract, for a lump sum, and the vendee receives part of the property and pays to the vendor a greater sum than the value of that received, can the vendee in fault recover against the vendor, not in default, in an action of *quantum meruit,* that portion of the purchase price over and above the value of the property received, deducting only the damage to the vendor due to the default of the vendee? Or, in other words, whether in case of such a contract, the party who refuses or neglects to perform the contract on his part, according to its terms can, notwithstanding such neglect or refusal, recover from the other party the money advanced under the contract, deducting therefrom any damage the vendor may have suffered.

This court has always held that where there was an open, subsisting entire contract for the performance of labor or the delivery of goods, if an action is brought it must be brought upon the contract. If the contract has been performed, then an action may be brought upon the contract or an action of *indebitatus assumpsit* for the work, labor, materials, money paid, for goods sold and delivered, as the case may be. *Holden Steam Mill* v. *Westervelt,* 67 Me. 450. So in a contract like the one under consideration, if there was any matter that would evince that the vendor had waived full performance, or it had been abandoned by mutual consent, or that the vendee had been prevented by inevitable accident, or prevented by the vendor, from performing the contract, or he had endeavored in good faith to perform the contract according to its terms, he might recover.

*Veazie* v. *Bangor,* 51 Me. 512; *Holden Steam Mill* v. *Westervelt, supra.* But this court has never gone so far as to say that where there is a special contract for the performance of labor, for the delivery of goods, or upon any other subject, the party violating or refusing in bad faith or neglecting fully to complete his contract, or failing without legal excuse, can have an action at law in any form to recover *pro rata* compensation as far as he has performed. *Holden Steam Mill* v. *Westervelt, supra; Dwinal* v. *Howard, supra; Harmon* v. *Company,* 35 Me. 453; *Jewett* v. *Weston,* 11 Me. 346; *Miller* v. *Goddard,* 34 Me. 102; *Veazie* v. *Bangor,* 51 Me. 509; *Otis* v. *Ford,* 54 Me. 104.

It has seemed and still seems to this court that the establishment of such a principle would have a tendency to encourage the violation of contracts and to diminish in the minds of contracting parties a sense of the obligation which rests upon them to perform their agreements, and an increasing tendency to break existing contracts. *Thurston* v. *Nutter, supra.* It is the duty of the court to enforce the performance of contracts, not to encourage their violation. The party in default, where a valid contract exists, derives no benefit from partial performance of the contract unless rescinded by mutual consent, or the plaintiff has a right to rescind it at his election. *Rounds* v. *Baxter,* 4 Me. 454; *Frost* v. *Frost,* 11 Me. 235; *Weymouth* v. *McLellan,* 14 Me. 214; *Appleton* v. *Chase,* 19 Me. 74; *Grimes* v. *Goud,* 10 At. 116. These cases were contracts involving the sale of real estate. But in *Brown* v. *Haynes,* 52 Me. 578 at 581, the court said the same rule applies in a contract for the sale of personalty as applies in a contract for the sale of real estate. The purchaser failing to perform his agreement derives no benefit from a partial performance of his contract. In *Dwinal* v. *Howard,* 30 Me. 258, the court said where, under a contract, the purchaser receives a part of the commodity and pays to the seller a greater sum than that part, at the agreed rates, would amount to, yet if he fails to pay the residue at the stipulated time the seller may,

for such failure, rescind the contract as to the residue and without liability to pay back any part of the amount which he has received.

A careful consideration of the entire charge in connection with that portion excepted to leads us to believe that the jury may have been misled, rendering their verdict under a rule of law inapplicable to this case, it not appearing as a matter of law that, upon proper instructions, a contrary verdict could not have been properly found. The defendant is aggrieved and his exceptions to this portion of the charge must be sustained.

Having arrived at this conclusion we do not find it necessary to consider the motion and other exceptions.

*Exceptions sustained.*
*Verdict set aside.*
*New trial granted.*