**COMBUSTION ENGINEERING, INC., Plaintiff/Counterclaim Defendant,**

v.

**MILLER HYDRO GROUP, Defendant/Counterclaim Plaintiff,**

**and Kansallis–Osake–Pankki, Party in Interest.**

Civ. No. 89–0168–P–C.

United States District Court, D. Maine.

Oct. 6, 1992.

---

See also 760 F.Supp. 9.

John H. Montgomery, David Soley, Gordon F. Grimes, Robert H. Stier, Linda Monica, Bernstein, Shur, Sawyer & Nelson, Portland, ME, for plaintiffs.

George S. Isaacson, David Bertoni, Brann & Isaacson, Lewiston, ME, for defendant Miller Hydro.

Howard H. Dana, Jr., Verrill & Dana, Portland, ME, for defendant Kansallis–Osake–Pankki.

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

GENE CARTER, Chief Judge.

After entering into a turnkey construction contract with Defendant for a hydroelectric facility in Lisbon Falls, Maine, Plaintiff designed, constructed, and tested the facility. In 1989 Plaintiff brought this suit for breach of contract, alleging that Defendant had failed to pay certain amounts due under the contract including the retainage and bonus amounts for power generated in excess of the contract minimums. The complaint was amended to include equitable claims for unjust enrichment and equitable estoppel. Defendant counterclaimed for breach of contract, fraud, and misrepresentation. Trial was held in this matter in January, 1992, on Plaintiff's contract claim and on Defendant's counterclaims. The Court left the parties' claims for equitable relief for later resolution.

At trial the parties stipulated to both the existence and the validity of the turnkey contract. At the end of Plaintiff's case, the Court granted the Defendant's and the Party-in-Interest's motions for judgment on Plaintiff's contract claims as a matter of law, finding that Plaintiff had breached the turnkey contract. The Court determined that Plaintiff had not fulfilled a condition precedent to the contract by failing to test the facility as contemplated in the contract and by failing to achieve final acceptance.

The jury considered Defendant's counterclaims, finding that Plaintiff had committed fraud by means of both affirmative misrepresentations and omissions concerning the facility. The jury also found that Plaintiff had breached the turnkey contract in several respects. Specifically, it concluded that Plaintiff had designed the turbines with a flow in excess of that specified by the contract, had installed equipment with an electrical capacity in excess of that prescribed by the contract, and had construct-

ed a facility which was not in accordance with the federal license incorporated in the contract. Plaintiff's breaches consisted of designing and building the facility with a greater ability to generate electricity than was contemplated under the contract. Despite the breaches, the jury concluded that Defendant was entitled to no damages on its counterclaims.

■ Now asserting its equitable claims, Plaintiff argues that even though it breached the contract, it should be allowed to recover in *quantum merit* or on a theory of promissory estoppel for the benefit conferred on Defendant. Defendant argues that Plaintiff cannot obtain equitable relief when a valid written agreement covers the construction work at issue. Although other states have established such a principle, *see e.g., Commerce, Crowdus & Canton, Ltd. v. DKS Construction, Inc.,* 776 S.W.2d 615, 620 (Tex.App.1989); *First National Bank v. Burton, Parsons & Co.,* 57 Md.App. 437, 451, 470 A.2d 822 (1984), the Maine Law Court has not set forth such an absolute rule.[1]

Defendant relies on *Aroostook Valley R. Co. v. Bangor & Aroostook R. Co.,* 455 A.2d 431, 433 (Me.1983), in which the Law Court stated that

> when two parties have agreed upon specific and unambiguous terms of compensation for specified services by means of an express contract, ... the law should be *most hesitant* to imply a second contract, which covers the same subject matter, if the evidence does not compel an inference that the parties intended to make one.

(Emphasis added). Clearly, however, alternative remedies are not entirely prohibited, and Maine law contains a smattering of cases from which can be gleaned the instances in which recovery might be permitted.

In *Loyal Erectors, Inc. v. Hamilton & Son, Inc.,* 312 A.2d 748, 755 (Me.1973), another case relied on by Defendant, the Law Court was called upon to determine whether a debt was due absolutely or con-

tingently for purposes of a Maine trustee process statute. The case concerned a building contract which included a requirement that an architect give a certificate of approval before the retainage could be paid. Having found that the architect's certificate of approval was a condition precedent which had not been fulfilled, the court addressed the issue of an action in *quantum meruit* despite the failure to fulfill the contract:

> The mere fact that an action based on "quantum meruit" concepts could possibly be entertained in the instant case, notwithstanding the failure to obtain the architect's certificate of approval, on which we intimate no opinion, does not ipso facto convert what was an intended conditional potential liability for the retainage fund to a debt "due absolutely and not on any contingency."

*Id.* Assuming that such an action was maintainable, however, the court examined the equities of the situation, finding they favored the person for whose protection the retainage clause was inserted in the contract. *Id.* at 756. The legal issue presented in this case is different from that presented in *Loyal Erectors.* The factual situation is similar in certain respects, however, and considering the equities, as did the court there, the Court finds no reason in the context of this construction contract to depart from the intended purpose of the parties under the contract. *See id.* at 757.

Plaintiff cites Maine cases in which, despite a breach of an express construction contract by the builder, a buyer has been required to pay in *quantum meruit* for the value of the goods and services received. In *Gosselin v. Better Homes, Inc.,* 256 A.2d 629 (Me.1969), the Law Court permitted recovery when an express construction contract has not been fulfilled, but the buyer had received the benefit of the construction, accepted it, and used it.

■ Just as Maine has no absolute rule barring equitable recovery in the presence of a valid contract, there is no absolute rule

---

**1.** At trial, this Court instructed the jury on Maine law for determination of the fraud and contract counts. The parties also rely primarily on Maine law in arguing this motion.

requiring equitable recovery for partial performance when the person seeking restitution has breached an express contract. Analysis of the precedents underlying *Gosselin* and those subsequent to it demonstrate that the Law Court looks to the equities of the situation, specifically to the good faith of the breaching party, to determine whether restitution should be awarded. In 1863, the court enunciated the principle:

When there has been no *intentional* departure from the contract, or failure to perform it, but the party has acted in good faith, endeavoring to fulfill it according to its terms in case of failure, he may recover what his services are worth, less the damage caused by such failure.... In all these cases where the question has been raised ... proof of an *intention, bona fide,* to perform the contract fully, has been held indispensable to recovery....

And there is good reason for holding such intention essential. If one might knowingly depart from the terms of a contract, or, with no good excuse, leave it half performed, and still have the right to exact payment for his services, it would not only leave the other party without any right or power to carry out his own plans in his own affairs; but, it would open a wide door for fraud, and be a fruitful source of litigation. No person has any right to *any compensation* for services rendered under a special contract, unless he has at least *attempted,* in good faith, to perform all its conditions.

*Veazie v. City of Bangor,* 51 Me. 509, 512–13 (1863) (citations omitted).

In 1947, the Law Court reiterated this analysis in *Levine v. Reynolds,* 143 Me. 15, 23, 54 A.2d 514 (1947):

[T]his court has never gone so far as to say that where there is a special contract for the performance of labor, for the delivery of goods, or upon any other subject, the party violating or refusing in bad faith or neglecting fully to complete his contract, or failing without legal excuse, can have an action at law in any form to recover *pro rata* compensation as far as he has performed....

It has seemed and still seems to this court that the establishment of such a principle would have a tendency to encourage the violation of contracts and to diminish in the minds of contracting parties a sense of the obligation which rests upon them to perform their agreements, and an increasing tendency to break existing contracts.... It is the duty of the court to enforce the performance of contracts, not to encourage their violation.

*Id.* (citations omitted).

Although *Gosselin* did not address the good faith of the breaching Plaintiff in its decision to award restitution, cases subsequent to it have harked back to the good faith requirement.[2] In *Loyal Erectors,* for example, the Court noted that "[r]elief has been granted on equitable principles, when services have been rendered or materials furnished in an honest endeavor to perform the special contract, but the performance has fallen short of fulfilling the express

2. In their treatise, *Maine Civil Remedies,* commentators Andrew Horton and Peggy McGehee argue that by approving the *quantum meruit* recovery for the defaulting contractor in *Gosselin* without discussion of the good faith requirement, the Law Court left "open the possibility that even a willfully breaching contractor could obtain restitution if the benefit retained were substantial and the other party has elected to retain the benefit." A. Horton and P. McGehee, *Maine Civil Remedies,* § 11.2–1.2(f) at 11–14. This Court thinks that the subsequent case law belies that suggestion.

Horton and McGehee go on to suggest that a *per se* good faith requirement is misguided from the standpoint of preventing unjust enrichment, and that good faith should be just one of a

number of factors considered in deciding whether to award restitution. *Id.* The position taken by McGehee and Horton is consonant with that suggested by the Restatement (Second) of Contracts § 374 and Comment a to that section, and has also been advocated in Corbin, *Corbin on Contracts,* § 1123(B) (Supp.1992). The position of the Law Court, requiring good faith performance, reflects the rule put forth in the first Restatement, Restatement of Contracts § 357. The Court notes, however, that comment (f) to the first Restatement's § 357 suggests that recovery be allowed even when a wilful breach occurs if the benefited party knows of the breach or impending breach and accepts the benefit of it unreasonably.

terms of the agreement, and the other party has received a windfall of some value." *Loyal Erectors*, 312 A.2d at 756.

In 1979 the Law Court reaffirmed what it said was the rule of *Gosselin:*

[I]f the contract has been substantially performed and the deficiencies are not the result of the *intentional* deviation from the contract and can be remedied at a cost that is reasonable in relation to the contract price, the amount thus reasonably required to remedy the defect may be used as the measure of recovery.

*Wimmer v. Down East Properties, Inc.,* 406 A.2d 88, 92 (Me.1979) (citing *Gosselin*) (emphasis added). Moreover, as recently as 1986, again referring to *Gosselin,* the Law Court stated that a contractor would be entitled to restitution for substantial performance if that performance were rendered "in good faith." *F.A. Gray, Inc. v. Weiss,* 519 A.2d 716, 717 (Me.1986).

Plaintiff argues here that it has substantially performed the contract and that Defendant will be unjustly enriched if it is not required to pay Plaintiff a bonus for extra energy production. It appears clear from the Maine case law, however, that the Court must still consider whether Plaintiff's performance under the contract, which resulted in a finding of breach both by the Court and the jury, was a good faith effort to fulfill its part of the contract.[3]

■ The Court is satisfied that Plaintiff did not seek in good faith to meet its obligations under the turnkey contract. The jury found that Plaintiff had breached the turnkey contract by designing and installing equipment which exceeded the specifications of the contract. The jury also found that Plaintiff made fraudulent misrepresentations and omissions to Defendant about the facility's equipment and capacity. These findings of fact are binding on the Court in making its equitable determinations. *See Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506, 79 S.Ct. 948, 954, 3 L.Ed.2d 988 (1959); *see also* C.

Wright, *Law of Federal Courts,* at 611 (4th ed. 1983). Clearly, since Plaintiff was fraudulently trying to conceal important aspects of its performance of the contract and those aspects were part of the basis of its breach, the Court cannot find that Plaintiff made a good faith effort to perform.

■ Since Plaintiff has not attempted in good faith to perform its part of the bargain, it is not entitled to a restitutionary remedy in *quantum meruit.* Also, given the fraud and lack of good faith on the part of the Plaintiff, this is a clear instance in which the Court must heed the Law Court's counsel to hesitate before implying a contract in law where an express contract exists. *See Aroostook Valley R.,* 455 A.2d at 433. Indeed, the requested equitable relief must be denied.

Accordingly, it is ORDERED that Defendant's Motion for Judgment as a Matter of Law on Counts III and IV of Plaintiff's Complaint be, and it is hereby, GRANTED.

SO ORDERED.

---

**3.** A second prong to Defendant's argument on this motion is that Plaintiff should be denied equitable relief because it has come to court with unclean hands. *See, Conners v. Conners*

*Bros. Co.,* 110 Me. 428, 434, 86 A. 843 (1913). Clearly, as Defendant points out, the good faith requirement for substantial performance is a variant of the clean hands doctrine.