Robbins *v.* Gleason.

———◆———

NATHANIEL ROBBINS & *ux., Petitioners for Partition, versus*
JOSEPH GLEASON & *ux.*

Where, in the return of commissioners to the Probate Court, of their division of real estate, among the heirs of a deceased person, and also, in the decree of the Judge accepting the same, there is a want of technical accuracy, — if all the heirs had signified in writing their approval of the assignment, and the heir to whom the whole estate was assigned went into possession thereof, paid a part of the sum which the commissioners adjudged to be the proportionate value of the share of the others, and they made no claim to the estate for many years, they will, afterwards, be precluded from contesting the correctness of the proceedings in making the division.

And where the commissioners, adjudging that a division of an estate would greatly injure the whole, assigned the same to one of the heirs, fixed the amount to be paid by him to the others respectively, and the times of payment, and state, in their return, that the estate assigned "shall be held as collateral security for the payment of the several sums;" which sums were paid in part only, *it was held,* that the conduct of the parties, the proceedings in probate, and the long continued possession under the assignment, without complaint, indicate that it was clearly the intention of the parties that the assignee should hold the estate as of freehold, subject to be defeated by non-fulfilment of the conditions; in which event the other heirs might re-enter and hold the same *as collateral security* for the sums due to them.

But, before re-entry, they cannot sustain a petition for partition, being only in the nature of mortgagees out of possession, but with the right of entry to foreclose, or hold possession for condition broken.

Where conditions are annexed to an estate, the question, whether the conditions are precedent or subsequent, must depend on the intention of the parties, and the nature of the case.

REPORTED by MAY, J.

THIS was on *petition for partition* of two lots of land in the town of Union, described in the petition, which was

entered at May term, 1857, when notice was ordered, which, at a subsequent term, was proved. Joseph Gleason and Betsey G. Gleason his wife, (the other respondents having been defaulted,) appeared and pleaded, by brief statement, claiming to be sole seized of the first lot described in the petition, in right of said Betsey; and, also of a portion of the second lot in their demesne as of fee, and disclaiming the residue. A second brief statement, claiming title by virtue of twenty years possession, was afterwards filed.

From the report of the evidence, and the papers accompanying the same, it appears it was agreed, that the premises, of which partition was prayed, were the part of the real estate left by Micajah Gleason, which was set off to his widow, Polly Gleason, as her dower. The said Micajah died during or about the year 1823, leaving two sons, Joseph, the respondent, and William; also five daughters, Eliza, Mary, Olive, Sarah, and Harriet, the petitioner.

On January 23d, 1828, the premises in question were assigned to the widow, as her dower. The residue of the real estate was divided among the heirs by partition, approved March 4th, 1829.

The widow died in 1835. At a Probate Court held at Warren, on the 9th of November, 1836, the heirs petitioned the Court to appoint a committee to divide the premises in question among the heirs. And, on the same day, the Judge issued a commission to John W. Lindley and two others, described as "three discreet and disinterested freeholders," to make partition as prayed for.

The commissioners, in their return, after stating that they had been duly sworn, had notified the parties interested, and had examined and appraised the estate, which they describe, further state, "and not finding sufficient to accommodate the whole, and that a division would be injurious, we have set off to Joseph Gleason, the oldest son and heir, said estate." * * *

"And we award that said Joseph Gleason pay to Nathaniel Robbins, jr., and Harriet, his wife," [and to the other heirs, who are severally named,] "the sum of $167,20, each, with interest

annually, on the first day of April, A. D., 1839, and the above described property is to be considered as holden as collateral security for the payment of the above named sum severally."

To which report is added a writing, signed by the petitioners and the other heirs, in these words: — "we, the undersigned, heirs to the above named estate, hereby signify our approval of the way and manner of dividing the aforesaid property."

The report was returned to the Probate Court, on the 10th day of May, 1837. The certificate of acceptance, signed by the Judge, is as follows: — " The within being returned as the division of the widow's dower within named, among the heirs of Micajah Gleason, and it appearing that the persons interested are satisfied therewith, I do therefore decree that the same be accepted and recorded."

*Nathaniel Robbins,* one of the petitioners, testified in substance, that Harriet, his wife, was one of the daughters of Micajah Gleason; he married her in the year 1822. That the sum to be paid to him and his wife, according to the report of the commissioners, by said Joseph, has been paid in part only — the sum of $75, paid on May 26, 1839, and $60, on April 22, 1844. The balance of principal and interest remains unpaid. Had frequently called on Joseph for it, who replied that he was " pressed for money; did not know where to get it; if you can't wait, you must take the land, that is holden for it, and you will be sure of your pay." He replied thus to me, about four years ago, and had so replied, frequently, before that time.

*On cross-examination,* witness testified that neither he nor his wife had had any possession of the premises, since the partition in 1837; have not claimed to own or occupy, nor claimed any of the rents and profits. The respondent has improved and occupied the premises as others occupy the premises they own. Does not know that any others of the heirs have claimed the premises or any part of the rents and profits since the partition.

There was other testimony as to the nature of the posses-

sion by the respondent, and also as to his acknowledgment of indebtment to the heirs.

*The respondent,* called by his counsel, testified as to his exclusive occupation of the premises, and as to the value of improvements made by him.   On his cross-examination, it appeared that the consideration of a deed from him to one Collins, (which was put in by respondent,) was a note of $700, which Collins gave him at the time he conveyed to him ; " that he let his wife have the note, which she gave up to him when he conveyed the premises to her."

The cause was withdrawn from the jury, to be reported for the decision of the whole Court, such disposition to be made of the same as to the Court shall seem meet.

The statute provisions, referred to in the arguments of the counsel and in the opinion of the Court, are contained in c. 51 of the laws of 1821.

By section 31, the Judge of Probate was authorized to issue his warrant to three discreet and disinterested free-holders, to cause such real estate as should be situated in the county, to be divided among the heirs or devisees of a person deceased.  And, by section 38, the Judge of probate might, in like manner, cause a division of the reversion of the widow's dower, either during the existence of a tenancy in dower, "or upon the determination of the estate in dower, at the discretion of the Judge."

And, by section 31, it is provided "that where such real estate cannot be divided among all the heirs or devisees, without great prejudice to, or spoiling the whole, the Judge may assign *the whole* to one of the heirs;" preferring the older to the younger children, and males to females; such heir, paying to the other heirs "their proportionate share of the value thereof," on appraisement by the committee, or giving sufficient security to pay the same, as the Judge of Probate should direct.

By section 36, it is provided, that where any tract of land should be of greater value than the share of any one of the petitioners, and the same " cannot *without great inconvenience*

be sub-divided, the same may be assigned to one of the parties only, such party paying such sum of money, to the other parties, as the committee appointed to divide the same shall award, and at such time and manner as the Judge of Probate shall direct." Such assignment was to be accepted by the heir to whom it was made.

By section 33, it was provided, " that such division of any such real estate, made as aforesaid, and accepted by the Judge of Probate, and recorded in the Probate office, in the same county, shall be binding on all persons interested."

*Ruggles & Vose,* for the petitioners.

1. The proceedings of the Judge of Probate and of the commissioners, in making the distribution among the heirs, were not in accordance with the statute. The commissioners did not find that the land could not be divided without " great injury" to, or " destruction of the whole." They decided that Joseph should have a pay-day, and that the land should be considered as holden as collateral security for the payment; which the law gives them no authority to do. Whether the Judge himself could make such a stipulation, in regard to lands " being considered as holden as collateral security," must depend upon what construction the stipulation is to receive. The Judge makes no such order. His decree is merely an approval and acceptance of the report of the commissioners, made, not as an adjudication of his own, but because, as he says, the parties were satisfied with it.

There are other irregularities; but it cannot be pretended that, (apart from the approval signed by the parties,) such a departure from the statute requirements would not be fatal.

It is not a *partition* of the land, but a conveyance from one heir to another. It is a transfer of real estate, to be done by a functionary who has nothing in it, in a manner provided by statute. To be legal, it must be done in the manner provided. If not so done, it is merely void.

An officer with his execution must follow the provisions of the statute in levying on real estate, or no title passes to the

creditor. The Judge of Probate and the commissioners are just as much bound to comply with the statute, in their undertaking to transfer title from one heir to another. To each is given some discretion in some things, but the statute provisions are as obligatory on one as another.

Now, can the expression of satisfaction by the parties, of "the way and manner of dividing the property," have any effect on the title? Can it confer power on the commissioners or the Judge of Probate, which the law defining their powers and duties does not confer? Can they authorize either to omit what the law says they shall do to render their acts valid in transferring real estate from one heir to another?

The "approval" by the heirs, in this case, cannot make lawful a transfer or assignment, that, without it, is unlawful. Such assent may act upon the *discretionary* power of the Judge and of the commissioners, but cannot justify them in departing from what the law requires.

There is, then, no change of title. The assignment was merely void. Hence, no appeal was necessary. Where the record shows no legal transfer, no appeal is requisite. As a general proposition, it is true that a decree of a Judge of Probate, in a matter over which he has jurisdiction, is conclusive and binding unless appealed from.

The only remedy is by appeal. But it is not universally true. Like all general rules, it has its exceptions. A transfer or assignment of real estate, in a manner shown by the record not to be in accordance with the provisions of the statute, is one of those exceptions. *Smith* v. *Rice*, 11 Mass., 512.

It was the fault of the respondent, in not making payment, that has made it necessary to seek a remedy. When the time of payment came round, it was too late to appeal. The laches of the respondent has released the petitioners from any obligations to abide by the assignment, and they are at liberty to call in question its legality, as they now do by this petition for partition. *Dean* v. *Hooper*, 31 Maine, 107.

2. Take another view of the case. Suppose the assignment valid, made so, of course, by the mutual agreement of the parties, incorporated into the proceedings in probate, and occupying a place in the record. It is not simply an adjudication of the Judge of Probate. It is rather a contract of parties sanctioned by the Judge. Had the action of the commissioners and of the Judge been legal, without the approval of the parties, it would then have been an adjudication sanctioned by the parties. But, in whatever light it is regarded, it is subject to construction; whether contract or decree, or both combined, it must be construed by the same rules that apply in construing contracts.

The assignment is qualified by the stipulation that Joseph shall pay the other heirs $167,29, each, with interest annually, the payment to be made to the petitioners on the 1st day of April, 1839,—"and the above described property is to be considered as holden as collateral security for the payment of the above named sums severally." This must be construed as a condition *precedent*. The land is to be *holden* by the several heirs as their security. If the title passed *in presenti* they could not hold it. Joseph would hold it and own it. In a similar case, in many respects, *Thayer* v. *Thayer*, 7 Pick., 208, the Court says, " it does not appear that the money has either been paid or secured, and, until one or the other is done, the land does not pass."

No form of words is necessary to constitute a condition. It must always depend on the intention of the parties. Parsons on Contracts, 39.

A grant of land "for county site and county buildings" was held a condition subsequent. *Daniel* v. *Jackaway*, Freem., c. 59. Such construction should be adopted as will best carry out the intention and design of the provision in question and give it effect. *Merrill* v. *Gove*, 36 Maine, 346.

What better security, what more obvious and natural, than for the heirs to continue to hold their interest in the land as tenants in common until payment is made ?

If the title passed *in presenti*, the heirs would be left with-

out security. Such a construction of the assignment would invalidate it, it being made without providing for any security for the payment, which the statute expressly requires of the Judge of Probate. The statute, in effect, provides that no such assignment, giving day of payment, shall be made without providing for sufficient security. The security in this case consists in retaining the title to the land until payment be made.

3. It may be susceptible of another construction. It may be regarded as an assignment to Joseph to take effect *in presenti* on a condition *subsequent.*

If it is to be regarded as on a condition *precedent,* no title passes until the condition is performed. If, as on a condition *subsequent,* then the title passes at once, and, on failure to pay, or the breach of the condition, the title reverts, and the party becomes possessed of his previous interest in the premises.

Under such circumstances, viewing it as a condition *subsequent,* the question might arise as to the necessity of making entry for condition broken. This case shows no formal entry. But it does show all that is requisite to enable the petitioners to have partition. It shows the consent and admission of respondent to their taking the land. "There is the land," said he, "if you can't wait any longer, take the land. You hold the land as security." This was repeated from time to time. He thereby admitted that he held in subordination to them, offering to let them take the land, and thereupon they bring this petition for partition. Besides, they are tenants in common, and the possession of one tenant in common is the possession of the other. And the language used by the respondent was an admission that he held the possession as well for his co-tenant as for himself. No further entry was necessary to revest his tenancy in common, even if in a legal sense he had been out of possession.

Under our statute relating to the seizin necessary to maintain an action, the common law necessity of entry to revest the estate after the breach of condition subsequent, does not seem to exist. Certainly not in cases of tenants in common,

where the tenant in possession recognizes the right to possession in the other.   It would be carrying out the common law rule after the reason for its adoption has ceased to exist.

*Gould,* for respondents, argued that the petitioners are not tenants in common.   The premises had been assigned to Joseph Gleason, under the provisions of the statute.   After the decease of the widow of Micajah Gleason, the heirs petitioned to the Judge of Probate for the appointment of commissioners to divide the premises in question.   They were legally appointed and sworn, and proceeded to make the partition. In their report, they certify that, "not finding sufficient to *accommodate the whole,* and that a division *would be injurious,* we have set off to Joseph Gleason, the oldest son and heir," said estate.   The statute provides that "when it cannot be divided *without prejudice* to the whole," &c.   The terms used by the committee are equivalent to those of the statute.   It is not essential that they should employ the exact language.   It is sufficient if, in any form of words, it appear that the circumstances existed, which would authorize them to assign the whole estate to one of the heirs.   This may be done, if it cannot be divided "without prejudice" to the whole.   The committee say that a division "would be injurious" to the whole.   Thereupon, they proceed to assign the whole to Joseph, and the assignment was *accepted* by him.

The committee determined "the proportionate share of the value" of the premises to each of the other heirs.   And the Judge decrees as follows:—"And it appearing that the persons interested are satisfied therewith," (viz., the assignment of the whole estate to Joseph,) "I do therefore decree that the same be accepted and recorded."   This is all the decree the statute required.

So far as the Court and committee acted within the authority conferred on them by the statute, the transaction was valid and binds the parties.   Wherein they *exceeded* their powers, the award and decree had no force.

The statute requires the heir, to whom the whole is assign-

ed, to pay the shares of the others, or to give security therefor,. to be paid in such time and manner as the Judge of Probate shall direct; not to be paid or secured in such time or manner as the committee should determine. They had no power over the time or manner of payment, nor over the manner or kind of security; and, so far as their report determines these matters, it is a nullity.

The Judge had no power to direct that he should give security on the same property, in the way of mortgage; but, if he had, it must be by mortgage and not by a conditional partition.

Either the land was divided or it was not. If it was divided, subject to a condition which the commissioners or Judge had no power to impose, then the condition is void, and the partition stands as though no condition was in it. Neither was it competent for the parties, by agreement, to thus stipulate for a lien or mortgage of the estate, except by deed. It was competent for them to agree to a partition, which they did.

The other heirs had a right to have their shares secured, before the partition was completed; but they waived this right, and relied upon Joseph's promise, signing the partition and procuring it to be completed.

But, if it be admitted that a lien or mortgage was thus created, to secure the payment of the several shares, it is a lien of each, on the whole property; not of each, on his original share, as the petitioners seem to regard it. The language of the report is, "and the above described property is to be considered as holden as collateral security for the payment of the above named sums severally."

If the petitioners have any remedy, it is by taking the land as a *whole*, not as tenants in common with respondent. If the petitioners are mortgagees of the property, jointly with the other heirs, to whom sums of money were to be paid, they are not tenants in common until an entry to foreclose. They cannot, therefore, claim partition. *Hammett* v. *Sawyer*, 12 Maine, 424. .

Robbins *v.* Gleason.

The cases of *Thayer* v. *Thayer*, 7 Pick., 209; *Gordon* v. *Pierson*, 1 Mass., 333, and argument of *Parsons*, of counsel; *Rice & ux.* v. *Smith*, 14 Mass., 431; *Smith* v. *Rice*, 11 Mass., 507, and *Whitman* v. *Watson*, 16 Maine, 461, were commented on, in the argument of the questions of the legality of the assignment, the ratification of it by the petitioners, and a waiver of objections to it.

It cannot with any force be said, that when the petitioners signified their approval of the manner of dividing the property, that they assumed, and intended that the payment of the sum awarded to them should be secured before the report of the commissioners was accepted; because the time of payment, and the manner and kind of security were provided for, and stipulated in the report, and they approve the whole; that is, they agree to the assignment to Joseph being made, as therein stipulated; expressing themselves content with the award of the sums to be paid to them, and the security therefor which was therein provided. It was such security as they chose to accept; whether good or bad, valid or invalid, is of no importance to the present consideration. They had a right to accept bad security, (i. e., the legal power to do it,) or to waive all security. In the language of the Court, in *Smith* v. *Rice*, the indorsement on the report shows, " instead of a tacit or implied assent, an express agreement and a waiver of all objections to the proceedings."

The case furnishes strong reason for holding the reception of a part even of the money, as in Massachusetts it was held, that the reception of interest merely was a ratification.

If the partition can be construed as being upon the condition precedent, that condition was waived by the reception of a part even of the money. Here nearly the whole was paid.

It was further argued that the respondent had acquired a possessory title to the premises.

That the process can avail only a party who has seizin in fact, which is not the case of the petitioners. *Bonner* v. *Ken. Purchase*, 7 Mass., 475; *Rickard* v. *Rickard*, 13 Pick., 251;

*Flagg* v. *Thurston*, 13 Pick., 145; *Barnard* v. *Pope*, 13 Mass., 434.

If the respondent has not acquired title to the whole by the proceedings in Probate Court, as ratified by the parties, or by the acts of the parties, independent of those proceedings, then the respondents are entitled to betterments; in which case, this process of partition cannot be maintained. *Saco Water Co.* v. *Goldthwaite*, 35 Maine, 456; *Linscomb* v. *Root*, 8 Pick., 376; *Bailies* v. *Buzzey*, 5 Greenl., 153; *Tilton* v. *Palmer*, 31 Maine, 486.

The opinion of the Court was drawn up by

RICE, J.——The parties claim as heirs or the representatives of heirs of the late Micajah Gleason. The estate now sought to be parted was, after the decease of said Gleason, assigned to his widow for her dower. The widow had also deceased before the proceedings were had in the Probate Court, for the division of the estate now in controversy among the heirs of Gleason. November 26, 1836, "three discreet and disinterested freeholders" were appointed as commissioners by the Judge of Probate to divide the above estate.

On the 3d day of May, 1837, the commissioners made a report of their doings to the Probate Court, in which, after stating that, "not finding sufficient to accommodate the whole, and division would be injurious," they proceed to assign the principal part of the estate to be divided to Joseph Gleason, · one of the respondents, and the oldest son of Micajah Gleason, and make compensation to the other heirs in money to be paid to them, at periods, then future, by the said Joseph, and then close their report in these words——"and the above described property is considered to be holden as collateral security for the payment of the above named sums severally."

This report was accompanied by the following certificate, which is signed by all the heirs, including the petitioners and the respondent Joseph Gleason.——

" We, the undersigned, heirs to the above named estate,

hereby signify our approval of the way and manner of dividing the aforesaid property."

The record of the Probate Court, held May 10, 1837, recites that "the within being returned as the division of the widow's dower within named, among the heirs of Micajah Gleason, and it appearing that the persons interested are satisfied therewith, I do therefore, decree that the same be accepted and recorded.  "Nath'l Groton, Judge."

The first question presented is whether these proceedings were legally binding upon the parties interested in the estate.

By the provisions of § 31, c. 51, of statute of 1821, Judges of Probate were authorized to cause the real estate of deceased persons to be divided among the heirs or devisees by their warrant, directed to a committee of three discreet and disinterested freeholders, who should act under oath; and, when such real estate could not be divided among all the heirs or devisees or their legal representatives, without great prejudice to, or spoiling the whole, the Judge might assign the whole to one or so many of the heirs or devisees as the same will conveniently accommodate, always having due regard to the terms of any devise there may be in the case, and also preferring males to females, and among the children of the deceased, elder to younger sons; and, if any heir or heirs, devisee or devisees to whom any real estate should be so assigned, should not accept the same, or make or secure payments to be made as the said Judge of Probate should direct, then, and in such case, the same might be so assigned to one or more of the other heirs or devisees.

By section 33 of the same statute, it was further enacted that division of any such real estate, made as aforesaid, and accepted by said Judge of Probate, and recorded in the public office of the same county, shall be binding on all persons interested, *provided,* among other things, that before an order for such division should issue it should be made to appear to the said Judge of Probate that the several persons interested in such real estate, if living within the State, have had such notice of such partition as the Judge of Probate had

ordered, and had had an opportunity to make their objections to the same.

In the case under consideration, there is a want of technical accuracy, both in the report of the commissioners and also in the action of the Court of Probate thereon.  The terms of the statute are not used by the former, in determining the necessity of assigning the whole estate to one of the heirs, instead of dividing it among all, nor does the Judge make a distinct and formal decree by which the estate is divided and the question of security determined.  But, from their action, sufficient does appear to show that, in the opinion of the commissioners, the contingency contemplated by the statute, to authorize them to assign the whole estate to one of the heirs, existed, and although, in determining that point, they do not use the language of the statute, yet they use language which conveys, subtantially, the same idea.  It is also apparent that the Judge of Probate, by accepting the report of the commissioners and ordering the same to be recorded, deemed that action tantamount to a decree, setting out in terms the same provisions.  Whether these proceedings, thus informal or wanting in technical accuracy would, without the assent of the parties directly interested, be deemed sufficient, it is not now necessary for us to decide.  But these proceedings, taken in connection with the written approval of all the heirs of the way and manner of dividing the property, and the long continued acquiescence of all parties interested therein, must be held to preclude those parties from calling in question, at this late day, the correctness of those proceedings.  *Newhall* v. *Sadler,* 16 Mass., 122; *Smith* v. *Rice,* 11 Mass., 507; *Rice* v. *Smith,* 14 Mass., 431.

In the case of *Thayer* v. *Thayer,* 7 Pick., 209, cited by counsel, there does not appear to have been any security provided for the payment of the money to the other heirs by the party to whom the land was assigned.  For that reason, the division, as to those who had not been paid, was held to be void.

The division in this case, for the reasons already assigned

being deemed valid. The next question arising has reference to the security provided for the benefit of the petitioners and other heirs, and the mode by which they may avail themselves thereof.

Was the charge upon the land assigned to Joseph, for the security of the money to be paid by him to the other heirs, in the nature of a condition precedent, or a condition subsequent?

A precedent condition is one which must take place before the estate can vest. Subsequent conditions are those which operate upon estates already vested and render them liable to be defeated. 4 Kent's Com., 125. Whether conditions are precedent or subsequent depends on the intention of the parties and the nature of the case.

In *Stark* v. *Smiley*, 25 Maine, 201, which was a case of a will, wherein the testator devised his estate to his son, charged with the payment of legacies and other charges, and concluded in the following language;—"therefore, as soon as Thomas Smiley, &c., (the devisee,) shall have paid all the lawful demands against my estate and the aforementioned sums to my children and Ebenezer Woodman, or to their and his heirs, and otherwise fulfilled this my last will and testament, he shall, by this instrument, be entitled to all my real estate and the privileges thereto belonging, in the towns of Winslow and Clinton in the county of Kennebec, and the saw-mill in the town of Winslow, to have and to hold the aforementioned real estate to him and his heirs for their use and benefit forever." This was held to be a condition subsequent and that the estate vested in the devisee immediately on the decease of the devisor.

In *Fisk* v. *Chandler*, 30 Maine, 79, the question before the Court arose on the construction to be given to a condition in a deed, which provided for the payment of certain notes and to hold the grantor harmless from a certain mortgage. The concluding words are as follows,—"then the foregoing deed is to remain good and valid, otherwise it is to be null and void, so far as to make good any non-fulfilment of the

above conditions." Held, that this was a condition subsequent, and that the grantor might. enter for condition broken and hold possession of the premises as a pledge or mortgage.

Considering the situation of the parties in the case at bar, the acts of the Probate Court, and the subsequent acts of the parties interested, there can be no doubt as to their intention. It was evidently their intention that Joseph should have the land, and hold the same as an estate of freehold, subject to be defeated by the non-fulfilment of the conditions attached thereto in the report of the commissioners.

The condition, like that in *Fisk* v. *Chandler*, does not provide for an absolute forfeiture of the estate by a breach thereof, but authorizes the heirs, to whom money was to be paid, to reënter and hold the land as *collateral security* for the money due them.

Such being the character of the act of division, and such the rights of the parties under it, the only remaining question is whether the petitioners are in a condition to maintain this process for partition.

The evidence shows that, from the time of the division in 1837 to the present time, the respondent Joseph Gleason, or those claiming under him, have been in the actual and exclusive possession of the premises. The evidence also shows that he has not, until very recently, at least, claimed to hold it as an absolute and indefeasible estate, but subject to the right of the other heirs to reënter upon the estate and hold it as security for the money due them. He has not, therefore, matured a title in himself by disseizin. The right of reëntry is still open to the petitioners unless discharged by payment of the money due them from Joseph under the assignment.

By the provisions of c. 88, § 2, persons in possession or having a right of entry into real estate in fee simple for life, or a term of years, may maintain a petition for partition.

The petitioners do not sustain either relation. They are neither seized of the estate in fee simple, or for life, or for a term of years, nor have they the right of entry in such manner. They sustain rather the relation of mortgagees out of

possession, but with the right of entry to foreclose or hold possession for condition broken.   Whether this right, as contended by counsel for the defendants, attaches to the whole estate, or to an undivided portion thereof, is a question not now before us for decision.   The petitioners not being in a condition to maintain this process, according to the provisions of the report the *petition must be dismissed.*

TENNEY, C. J., and APPLETON, CUTTING, MAY, and GOODENOW, JJ., concurred.