ROBAIN ARSENAULT *vs.* BROWN COMPANY.

Androscoggin.     Opinion November 28, 1922.

*Res adjudicata, as a defense, sustained from plaintiff's declaration and the evidence.*

In the instant case the clean cut issue, upon the pleadings, is whether the plaintiff's declaration and the evidence present a case of res adjudicata. The defendant introduced no evidence, but relied upon the charge of the presiding Justice in a former case, introduced by the plaintiff as an exhibit, as sufficient to reveal a clear case of res adjudicata.

The contention is well founded. Res adjudicata is a rule of law established for the purpose of putting an end to litigation and to prevent the trying of a case piece meal.

Hence, the general rule that if a party has tried an issue or had an opportunity to try it, he is concluded upon the plea of res adjudicata and cannot proceed to any part of his case again.

On exceptions. This is an action of assumpsit on account annexed, upon a quantum meruit, under special contracts for cutting, hauling and landing pulp wood. At the close of the testimony a non-suit

was ordered, and plaintiff excepted.    The defendant pleaded the general issue with brief statements alleging that at a prior term of the Supreme Judicial Court for the County of Androscoggin, an action was entered in which the plaintiff, the defendant and the cause of action were the same as in this action, and that after a trial by a jury, evidence being introduced by both plaintiff and defendant, a verdict was returned for plaintiff, hence the claims and matters in this action are res adjudicata.    Exceptions overruled.

The case is stated in the opinion.

*Frank A. Morey,* for plaintiff.

*Benjamin B. Sanderson and Frederick R. Dyer,* for defendant.

Sitting:  Cornish, C. J., Spear, Philbrook, Dunn, Deasy, JJ.

Spear, J.    The present action involves a claim upon a quantum meruit under special contracts for cutting, hauling and landing a certain quantity of pulp wood, and for the stumpage charged therein, upon failure to perform the contracts.

At the close of the testimony the presiding Justice ordered a non-suit and the case comes upon exceptions.    The issues may be most clearly presented by reciting so much of the declaration and the pleadings as are directly involved.    The declaration avers that the plaintiff "under and by virtue of a contract with the defendant had cut for it 650 cords of wood in the winter of 1918 and 1919, and the defendant promised to pay him for cutting said wood seven dollars per cord, and that the plaintiff agreed that he would deliver it at a certain place agreed upon between them in the contract, but that the plaintiff was unable to make delivery of the wood at the time required through conditions for which he was not responsible, and by the requests of the defendant, and he says that the total amount for cutting said wood, which the defendant owes, was $4,554.97, and the plaintiff was charged by the defendant $4.00 a cord for the stumpage on 695.3 cords of wood amounting to $2,780.12, and making a total of $7,617.92 on both of these items, and that the defendant promised to pay the plaintiff the said amounts, and the plaintiff further alleges that he brought suit against the defendant company in September, 1919, at a time before the 650 cords of wood were actually driven to the place of destination, and the plaintiff alleges that this item was included in the suit

referred to, but that owing to the fact that there had not been a delivery, that the consideration of that item, except for any benefits that the company might have had at that time, was actually eliminated from the case and the consideration of the jury. Now the plaintiff alleges that after September, 1919, to wit: in May, 1920, the defendant took possession of the said wood and drove it to its place of destination, and that the plaintiff herein is entitled to receive from the defendant the amounts above stated less any amount that the defendant may have incurred in driving said wood to its destination.

"Wherefore an action hath accrued to the plaintiff to have and receive of the said defendant the sum of $7,617.92 with interest thereon from May 15, 1920, until this date, to wit the sum of $334.13, making a total of $7,952.05."

The plea is the general issue with several brief statements of defense, of which the following is pertinent and decisive of the issue, namely:

"And for further brief statement of subject matter of defense to be used under the general issue above pleaded, the said defendant further says that at the April Term, 1920, of the Supreme Judicial Court for the County of Androscoggin, the State of Maine, an action was entered in which this plaintiff, this defendant, and the cause of action were the same as in the present action; that at said April term, 1920, said action was tried before a jury, and after the introduction of evidence by the plaintiff and defendant, a verdict was returned by the jury for the plaintiff in the sum of $2,775.58; that thereafter judgment was rendered on said verdict; that no appeal was or has been taken from the said judgment; that said judgment rendered, was a final judgment of a court of competent jurisdiction; that said judgment is still in full force and effect, and has been satisfied; that there was no evidence of fraud in the said action or in the judgment rendered therein, and the defendant claims that by reason of the judgment rendered in said prior action, the plaintiff is estopped from recovering judgment in the present action; and that the claims and matters in this suit, by the said action are res adjudicata."

The clean cut issue, upon these pleadings is whether the plaintiff's declaration and evidence present a case of res adjudicata. The defendant introduced no evidence, but relied upon the charge of

the presiding Justice in the former case introduced by the plaintiff as an exhibit, as sufficient to reveal a clear case of res adjudicata.

We are of the opinion that its contention is well founded. Res adjudicata is a rule of law established for the purpose of putting an end to litigation and to prevent the trying of a case piece meal.

Hence the general rule that if a party has tried an issue or had an opportunity to try it, he is concluded upon the plea of res adjudicata and cannot proceed to try any part of his case again. While numberless cases can be cited in support of the general rule, the case of *Blodgett* v. *Dow*, 81 Maine, 197, as clearly and succinctly states the law as any case to be found, as follows:

"When it appears by the pleadings, that the subject matter in controversy was directly and necessarily in issue in the action, a general judgment, either on a general verdict of the jury or a general award of referees, while it stands unreversed, is a bar to another action for the same cause. The parties are estopped by it. But when the pleadings are such that the subject is not directly in issue, but may or may not be put in issue in the action, and the judgment does not disclose whether, in fact it was or not, the fact may be proved by parol; and this we understand is the distinction. *Cunningham* v. *Foster*, 49 Maine, 68; *Walker* v. *Chase*, 53 Maine, 258; *Cromwell* v. *County of Sac*, 94 U. S., 351; *Campbell* v. *Rankin*, 99 U. S., 261.

"Here, in the action of the plaintiffs v. *Rollins*, the note in suit was specially described in the first count in the writ, and went to the referees for adjudication. There is nothing in the record showing it was withdrawn. The judgment on the general award estops the plaintiffs and cannot be explained by parol. If, at the hearing, the plaintiffs for any reason, were not prepared to litigate the note, they should have seen to it, that it appeared by the judgment, that it was withdrawn."

The Justice in the former case correctly stated the plaintiff's form of action as follows:

"The plaintiff comes into court and by his writ—and I want to call attention to this at this time, because it may have some bearing in the discussion and instructions which I shall give you through the charge—you will notice from the writ that the plaintiff does not bring an action upon contracts, that is upon special contracts which it appears were entered into between the parties, but he brings

what is termed in law an action of assumpsit on an account annexed, simply charging the defendant company for labor performed in the cutting of a certain amount of wood, and claims that he is entitled to certain compensation therefor just as though there never had been any special contract between the parties so that, as a matter of fact, he is not bringing a suit on a contract but for labor done."

In other words the plaintiff's claim was one of quantum meruit to recover for services rendered under special contracts. The form of action constitutes an admission on the part of the plaintiff of the breach of his contracts. *Viles* v. *Lumber Co.*, 118 Maine, 148. It was, therefore, incumbent upon him to prove in the end, taking into consideration the contracts and his breach thereof, to what extent his services benefitted the defendant. *Viles* v. *Lumber Co.* supra. His form of action also opened the door to the defendant to offer evidence of whatever damages it had sustained in consequence of the breach, *Viles* v. *Lumber Co.*, supra, which, in the end, was to ascertain the benefit it had received from the services of the plaintiff under the contracts. The plaintiff and the defendant, therefore, each seek to establish the same result, the benefit to the defendant. It appears from the plaintiff's declaration, in the present suit and the charge of the Justice in the former suit, when read together, that, under the above rules of law, the very items, for which the plaintiff now seeks to recover, were submitted to the jury in the former suit, under the plaintiff's quantum meruit claim, that is, how much he was entitled to recover, upon all the wood he cut under his contracts, including the 650 cords and the stumpage now in suit.

As we read the charge of the presiding Justice in the former trial that was the precise question presented to the jury.

The plaintiff alleges in his declaration that the charge took away from the jury all consideration of the 650 cords "except for any benefits that the Company might have had at that time." But under the law governing this class of cases, the real issue in the case was the benefits the defendant had received under the special contracts. It was incumbent upon the plaintiff to show the extent of the benefits, taking into consideration the contracts, and the plaintiff's admitted breach thereof, the defendant being entitled to the advantage of his contracts.

The charge put the issue as follows:

"Now with reference to the stumpage claimed a rather difficult question arises under this form of action, and the evidence possibly may not be very clear to you as to just how the matter stands. The evidence with reference to the amount of wood that was left in the stream is only by estimate, approximately six hundred cords, and it is not clear as to how much of it has been delivered at a point where the defendant company could obtain it, or get it out, save it. Under this form of action if, up to the time of the beginning of the action in September, 1919, the plaintiff had performed any labor on this six hundred and fifty cords of wood that he has proven to you as of any value to the defendant company I think he would be entitled to recover, and I so instruct you."

Thus the exact question of what benefits were received by the defendant for services of any kind, upon the 650 cords involved in the present suit, was submitted to the jury in the former suit with specific instructions that the plaintiff would be entitled to recover therefor. These instructions were amplified in the following paragraph of the charge and made perfectly clear.

"And in determining what deduction there should be you may consider that, as to whether or not he has, in his manner of delivering this six hundred and fifty cords done it in such a way by leaving it in the woods so it will be destroyed from rotting, or delivering it at such a time it has been carried out, was a sheer loss, so the company will never get any benefit, if there is such an amount you will have a right to deduct the stumpage value from that amount, from the amount he would otherwise be entitled to. But so much of it as you find he has done any work on that the company can receive any benefit from, or had received any benefit from up to September, 1919, why, you may find what the value of that, or the benefit, was, taking into consideration whether there was any damage suffered by the defendant company through his failure to carry it out."

The question of the plaintiff's whole claim upon all the wood he had cut, under his contracts, including the 650 cords on the one hand and the deductions to which the defendant was entitled as damages for breach of contract, on the other, was clearly and fully submitted to the jury and must be regarded as res adjudicata.

The charge also properly and clearly presented to the jury the issue of stumpage, in its connection with the contracts and deductions for a breach thereof. It said:

"So too this question of stumpage, of allowing four dollars a thousand, must be determined upon this question of benefit. . . . But proceeding as he does upon a quantum meruit for value of services he had rendered the question of stumpage reduction would depend upon whether or not they were damaged by the wood being lost."

It is accordingly apparent from the above language that the question of what the defendant was entitled to have allowed him and deducted for stumpage on account of the plaintiff's breach of the contracts, was clearly and legally submitted on the true issue of benefits received by the defendant upon the whole transaction, and must also be regarded as res adjudicata.

The jury found, upon all the questions involved in the former case, including the 650 cords and the stumpage, that the plaintiff was entitled to $2,775.58 for the benefits he had conferred upon the defendant in the entire transaction. It would be impossible to find out what the jury considered in deciding the former case. All the issues were before them that are in the present case. The presumption is that in the former case they considered all and balanced all, and drew their conclusions therefrom. The verdict was general and must be held to have embraced all the issues that are found in the present case.

*Exceptions overruled.*