**LOYAL ERECTORS, INC.**

v.

**HAMILTON & SON, INC. and Robert C. Ford, Inc.**

Supreme Judicial Court of Maine.

Dec. 4, 1973.

Lipman & Gingras by Sumner H. Lipman, Augusta, for plaintiff.

Brann & Isaacson by Peter Garcia, Lewiston, Linnell, Choate & Webber by Frank W. Linnell, Auburn, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

DUFRESNE, Chief Justice.

On July 7, 1971 the plaintiff, Loyal Erectors, Inc., initiated proceedings against the principal defendant, Hamilton & Son, Inc. (Hamilton), for the recovery of $40,301.58, plus interest, which the plaintiff asserts Hamilton owes it by virtue of certain contractual obligations. In the prosecution of its claim, the plaintiff, pursuant to Rule 4B, M.R.C.P., on July 15, 1971 served a trustee summons on Robert C. Ford, Inc. (Ford), requiring the latter to show cause through verified disclosure why execution issued upon such judgment as the plaintiff may recover against Hamilton, if any, should not issue against the credits, which, on the date of service, Hamilton had with Ford and which Ford had in its possession as trustee of Hamilton, to the value of the plaintiff's claim, together with a reasonable allowance for interest and costs. 14 M.R.S.A. § 2601.

In the Court below, the principal defendant (Hamilton), by motion properly served on the plaintiff, sought the discharge of Ford as trustee, on the ground that the principal defendant's credits with Ford at the time of service of the trustee process were contingent claims only and not absolute liabilities. 14 M.R.S.A. § 2602(4). Ford's discharge as trustee is the basis for plaintiff's appeal. We deny the appeal.

■ The decision of the Presiding Justice rested on facts which Ford imparted in its disclosure under oath pursuant to 14 M.R.S.A. §§ 2608, 2709. The disclosure was neither attacked nor contradicted. The plaintiff could have raised an issue in respect thereto by alleging and proving any facts material to the question of chargea-

bility. In the absence of any proffered controversy, the trustee's sworn answers and statements must be deemed true.[1] *See,* Schwartz v. Flaherty, 1905, 99 Me. 463, 59 A. 737; Hamilton v. Hill, and Cole, Trustee, 1893, 86 Me. 137, 29 A. 956.

The disclosure is the statutory answer which presents the issues of fact upon which the liability of the trustee depends in reference to the business relations with the principal defendant. It is upon those facts as disclosed by the trustee's sworn statements that the court must decide whether the alleged trustee had credits of the principal defendant in its possession of such a nature and under such conditions as made them available to the plaintiff in trustee process. Hibbard v. Newman, 1906, 101 Me. 410, 64 A. 720.

The disclosure reveals that Ford had entered into two contracts with Hamilton. Under the contract of April 21, 1969 Hamilton agreed to install a complete ventilation and duct work system in the high school building at Cape Elizabeth, Maine, in accordance with specifications and drawings prepared by a named architectural firm. The price which Ford promised to pay Hamilton for the complete job was $104,500.00. Payment of this money was to be made as the work progressed "in the amount of ninety percent (90%) of the satisfactorily completed work." The contract further provided that "[t]he retained percentage shall be paid within ninety-two (92) days of the final approval and acceptance of the building by the Architect." The second contract executed November 24, 1969 called for the installation of a complete ventilation system in accordance with specifications and drawings prepared by another firm of architects. It was designed for the Waterville Osteopathic Hospital in Waterville, Maine. This contract carried the

price of $36,061.00 with a similar progress payment clause, the retained percentage, however, to be paid within 90 days "of the final approval and acceptance of the building by the Architect."

Ford maintains that, at the time of service of the trustee summons on July 15, 1971, it had not in its hands and possession any goods, effects or credits of Hamilton subject to trustee process, even though Hamilton's requisition for payment of the sum of $2,174.85 under the first contract and the sum of $3,334.90 under the second contract for alleged completion of the work had not been paid and the retained amount by the prime contractor, Fred I. Merrill, Inc. (Merrill) under terms similar to those provided in the contracts between Hamilton and Ford was in excess of Hamilton's requests for payment.

The trustee's sworn assertions further disclose that neither building at the time of service of the trustee process had been finally approved and accepted by the architect.

The issue on appeal is whether the Justice below was correct in discharging Ford as trustee pursuant to 14 M.R.S.A. § 2602(4) which provides:

"No person shall be adjudged trustee: . . . [b]y reason of any money or other thing due from him to the principal defendant unless, at the time of the service of the summons upon him, it is due absolutely and not on any contingency."

Initially, we recognize that the ruling discharging the trustee was interlocutory. The present appeal, however, is not premature. The order discharging the trustee is subject to an immediate appeal as an exception to the "final judgment" rule, because "great and irreparable loss"

---

1. 14 M.R.S.A. § 2710. Disclosure deemed true

"The answers and statements sworn to by a trustee shall be deemed true in deciding how far he is chargeable until the

contrary is proved, but the plaintiff, defendant and trustee may allege and prove any facts material in deciding that question."

may otherwise result. Foisy v. Bishop, 1967, Me., 232 A.2d 797. See, Field, McKusick and Wroth, Maine Civil Practice, § 4B.3.

Did the principal defendant, Hamilton, have a noncontingent claim against the trustee, Ford, at the time of service upon the trustee? In order to answer this ultimate question, we must determine whether the principal defendant's failure to secure "the final approval and acceptance of the building by the Architect", which the contract between the parties required, caused the retained percentage moneys to come within the statutory exception precluding trustee process, on the ground that, prior to the approval and acceptance of the building by the architect, there is no money or other thing "due absolutely and not on any contingency" within the meaning of 14 M.R.S.A. § 2602(4).

■ This determination must be made as of the time the trustee process was served, since the validity of the trustee process depends upon the state of facts as they existed at that moment. Holmes v. Hilliard, 1931, 130 Me. 392, 394, 156 A. 692; Hussey v. Titcomb, 1929, 127 Me. 423, 427, 144 A. 218; Williams v. Androscoggin and Kennebec Rail Road Co., 1853, 36 Me. 201, 210.

■ It should be further noted that the statutory reference to money or other thing due absolutely and not on any contingency does not mean that the amount of the debt must be certain, but rather, that the monetary obligation itself is absolute and not contingent. The mere fact that the amount due under an absolute indebtment may be unascertained or in dispute will not defeat a trustee process.

As stated in Davis v. Davis, 1862, 49 Me. 282:

"The contingency under this section [of the statute, as settled in Dwinel v. Stone, 30 Maine, 384], 'is not a mere uncertainty as to how the balance may stand between the principal and the supposed trustee; but it is such a contingency as may preclude the principal from any right to call the supposed trustee to settle or account.' "

See also, Wilson v. Wood, 1852, 34 Me. 123; Cutter v. Perkins, 1859, 47 Me. 557; Hussey v. Titcomb, supra.

We must have in mind, additionally, the provisions of 14 M.R.S.A. § 2628 to the effect that "[a]ny money or other thing due absolutely to the principal defendant may be attached before it has become payable, but the trustee is not required to pay or deliver it before the time appointed therefor by the contract."

In Davis, supra, this Court ruled that the preliminary proof of loss required by a fire insurance policy was a condition precedent to the right of the insured to recover, and, as such, within the exclusionary clause of the trustee process statute, since the liability of the insurer does not become absolute, unless the preliminary proof of loss, as provided in the conditions of the policy, is furnished.

In Wilson, supra, it was held that, where the contract called for the payment of a commission when a particular note was collected, there existed no absolute indebtedness under the trustee process statute until after the note had been collected. Until that fact had taken place, there was only a contingent liability.

In Jordan v. Jordan, 1883, 75 Me. 100, this Court decided that a contract to pay commissons on the sale of goods "as the goods should be paid for" did not create an absolute, but only a contingent, debt prior to payment, the Court stating: "This is not a debt due in the present and payable in the future, for there may never be a debt."

In Holmes v. Hilliard, supra, the contract provided for the purchase and sale of so much of the principal defendant's crop of sweet corn as should be approved as to quality by the supposed trustee, with payment for all the corn so received within sixty days from the close of the canning

season. There, the Court said: "Where money was to be paid on the contingency that work be well performed, trustee process was premature until the work had been duly performed."

When, by the terms of the contract, the price was payable upon the completion of the work and there was no acceptance of the work by the trustee, the use of trustee process prior to the completion of the contract was premature, as there was nothing due, and "non constat that there ever would be." Otis v. Ford, 1866, 54 Me. 104.

A widow's allowance, resting as it does in the sound discretion of the Judge of Probate, is not subject to trustee process prior to its actual adjudication, because, prior thereto, it is a mere contingent right. Hussey v. Titcomb, supra.

From a consideration of these cases, it appears that the potential debt to accrue out of a special contract may be characterized as contingent and not absolute, if the condition upon which the price is payable is deemed to be a condition precedent.

■ Whether the condition attached to the payment of the price be a condition precedent or subsequent depends upon the intention of the parties to the contract, to be determined by considering not only the words of the particular clause, but also the language of the whole contract as well as the nature of the act required and the subject matter to which it relates. Bucksport & Bangor Railroad Company v. Inhabitants of Brewer, 1877, 67 Me. 295, 299; Robbins v. Gleason, 1859, 47 Me. 259, 273.

In Bucksport & Bangor Railroad Company, supra, the condition in a subscription contract, which required that the road to be built "shall be located through the town of Brewer, satisfactory to the selectmen of said town," was viewed by the Court as intended and understood by the parties as a condition precedent and failure strictly to perform the same precluded any right of action by the plaintiffs.

■ In all cases where some person is agreed upon by the parties, in the contract, to examine and determine the character, quality, or quantity of the work done, *such examination and decision are conditions precedent to any right of payment,* and must be alleged and proved in order to maintain an action upon the contract. Veazie v. City of Bangor, 1863, 51 Me. 509, 514. Recovery was also denied in quantum meruit. Veazie v. City of Bangor, 1865, 53 Me. 50.

In Lynch v. Stebbins, 1928, 127 Me. 203, 142 A. 735, this Court, by way of illustration of conditions precedent, referred to construction contracts where recovery may be made dependent upon the production of an architect's certificate and cited Smith v. Brady, 1858, 17 N.Y. 173, in support thereof. The New York Court stated:

"Assuming that the contracts had been so far performed as to justify the plaintiff in treating them as substantially executed, as I am inclined to think they were, yet the final payment for the work was to be made when it was completed and a certificate of the architects to that effect obtained. The parties have seen fit to make the production of such a certificate a condition precedent to the payment. The plaintiff is as much bound by this part of his contract as any other. It is not enough for him to bring his action and say that he has completed the work which he undertook to do. He has agreed that the architects named should decide whether the work is completed or not. He cannot now withdraw the decision of this question from them and refer it to the determination of a legal tribunal."

In Daily v. Jordan & Trustee, 1848, Mass., 2 Cush. 390, the construction contract provided for progress payments of three fourths of the amount due for labor, and this had been paid. The one fourth retainage money had not been paid. At the time of the service of the trustee process, the whole of the work contracted for

had not been accepted agreeably to the clause in the contract which stated: "when the whole of the work contracted for is accepted, agreeably to contract, the balance due shall be paid to the contractor." Because the principal defendant had not obtained the engineer's certificate, the Massachusetts Court ruled that the trustees were properly discharged under a statute similar to ours.

In Hanley v. Walker, 1890, 79 Mich. 607, 45 N.W. 57, where, in a construction contract, the balance or retained percentage of 10% of the contract price was to be paid on the architect's certificate after the expiration of 30 days after acceptance and approval of the work by the architects and owner, the Michigan Court denied recovery on the contract or in quantum meruit, ruling that the parties had made the architect's certificate of approval a condition precedent to payment.

Where progress payments were payable under a construction contract to the extent of ninety percent of the amount of work done in accordance with schedule prices to be fixed by the engineer and upon the estimate and certificate of the engineer, our Court, in Ware v. Gowen, 1876, 65 Me. 534, characterized the monetary value of the ninety percent of the work performed as due absolutely and not on any contingency. It held, in effect, that the procurement of the certificate to establish the specific amount of work done and the value thereof was merely a condition subsequent, and that the debt arising out of the work performed was an absolute and not a contingent debt and was subject to trustee process, notwithstanding the fact the engineer's certificate of computation followed the service of the trustee process. It cited in support of its ruling, Ricker v. Fairbanks, 1855, 40 Me. 43, a case similar on its facts. In Ricker, this Court, construing a comparable progress payment clause, stated:

"[I]t is obvious from the situation of the parties, as well as from the whole scope of the contract itself, that it was intended that the 90 per cent stipulated to be paid monthly, *should be so applied as to enable the contractor to prosecute and complete the work for which he had contracted.*" (Emphasis supplied.)

The Court further said:

"That amount [earned in each month] becomes due, absolutely, on the first day of each month. The sum then due, is determined, specifically, by the engineer's certificate."

But the Court in *Ricker,* quoting from Williams v. Androscoggin & Kennebec R. R. Co., 1853, 36 Me. 201, restated the fact that the rule applicable to the monthly progress payment clause would not necessarily be the same as that applicable to the reservation clause respecting the payment of the retainage money, reciting as it did: "whether the one fourth which was reserved, should ever become payable, depended upon the contingency of the contract being fully performed; . . . ."

The parties to the instant building contract had dissimilar purposes in mind when they conditioned, upon the architect's certificate of approval, the right to receive both, 1) progress payments at periodic intervals of performance and 2) the final payment of the retainage fund at the end of the construction. Progress payment clauses are inserted in building contracts mostly for the protection of the contractor who is assured of periodic instalments of cash moneys with which he can continue performance of his contract and save himself from the embarrassment of extended credit and the costs thereof. True, the other party may be benefited incidentally by reason of the timely performance of the work, the avoidance of any breaches and the consequential inconveniences arising therefrom. On the other hand, the conditioning of the final payment of the retainage money upon the architect's certificate of approval is solely for the protection of the builder or owner; it is a substantial leverage to assure strict performance of the

contract in accordance with the agreement, drawings and specifications and to compel correction for material deviations therefrom. The trustee, whether he be the owner or, as in this case, the primary subcontractor responsible to the prime contractor who in turn owes full compliance with the terms of the contract to the owner (the Cape Elizabeth authorities and the Waterville Osteopathic Hospital), has a paramount interest in not releasing the retained funds until he is assured by the experts, upon whom the parties have agreed, that the contract has been completely performed in conformance with the plans and specifications. The retainage clause conditioning the final payment upon the architect's certificate of approval serves a vital interest, in that it induces the contractor to render a performance that conforms in fact to plans and specifications, spurs him to stay with the job and, upon completion, furnishes the main incentive to make conforming corrections.

For such reasons, we hold that the architect's certificate of approval was a condition precedent to the right of the principal defendant to receive the retainage moneys, and since, at the time of the service of the trustee process, such certificate had not yet been obtained, the unpaid retained moneys under the contract were not a debt due absolutely, but only contingently, and the decision of the Court below discharging the trustee was correct.

We note that the progress payment clause, in the instant case, provided that "[p]artial payments will be made by the Contractor to the Subcontractor as the work progresses in the amount of Ninety percent (90%) of the *satisfactorily* completed work" (emphasis added) and, to the extent of the underscored terminology, might be considered different from such clauses as this Court dealt with in *Ware, Ricker* and *Williams.* Therefore, we intimate no opinion as to the proper construction of such a clause which is not before us in this case.

It is contended, however, that an action in *quantum meruit* could have been brought by Hamilton against Ford to prevent unconscionable and unjust enrichment on the part of Ford, notwithstanding Hamilton's failure to secure the architect's certificate of approval and, by reason thereof, this Court should hold that the retained money was due absolutely and not on a contingency, contrary to our present ruling.

We fully agree with the established general rule that, subject to certain exceptions, a party is not chargeable in trustee process, with respect to credits, unless he is liable in an action to the principal defendant. Stowe v. Phinney, 1886, 78 Me. 244, 249, 3 A. 914. But the reverse is not necessarily true. The mere fact that an action based on "quantum meruit" concepts could possibly be entertained in the instant case, notwithstanding the failure to obtain the architect's certificate of approval, on which we intimate no opinion, does not ipso facto convert what was an intended conditional potential liability for the retainage fund to a debt "due absolutely and not on any contingency" within the meaning of the exception provided in 14 M.R.S.A. § 2602(4).

Assuming, as contended, that an action based on principles of unjust enrichment sounding in terms of "quantum meruit" formulation were maintainable by the principal defendant, Hamilton, against the trustee, Ford (but see, Veazie v. City of Bangor, 1865, 53 Me. 50), nevertheless, the following considerations induce us to hold that the final payment of the money retained under the building contract and by agreement of the parties made payable upon the certificate of approval of the architect, prior to the obtention of said certificate, is not an absolute but a contingent liability, and is not subject to trustee process, except upon a showing of fraud, bad faith or mistake in the withholding thereof.

■ Even though the contract between Hamilton and Ford did not contain an express provision respecting the quality of the work to be done or the manner of its performance, the law implies therein an undertaking to perform the work in a reasonably skilful and workmanlike manner, having regard to the general nature and situation of the projected object and the purpose for which it was manifestly designed. Gosselin v. Better Homes, Inc., 1969, Me., 256 A.2d 629.

■ We do recognize that the strict rules of the common law which required, as a condition precedent to the right of recovery, full performance of all the material terms of a contract, and especially building contracts, where the defendant, usually the owner, was practically forced to accept the result of the work, have been relaxed. Relief has been granted on equitable principles, when services have been rendered or materials furnished in an honest endeavor to perform the special contract, but the performance has fallen short of fulfilling the express terms of the agreement, and the other party has received a windfall of some value. See, Skowhegan Water Company v. Skowhegan Village Corporation, 1906, 102 Me. 323, 66 A. 714; Norris v. School District No. 1, in Windsor, 1835, 12 Me. 293, 296; Hayward v. Leonard, 1828, Mass., 7 Pick 181.

But this Court, in Viles v. Kennebec Lumber Company, 1919, 118 Me. 148, 106 A. 431, has analyzed the nature of that right and established the time of its accrual. First, the contractor who must resort for remedial relief to the equitable doctrine of a quantum meruit recovery under a special contract, oral or written, acknowledges from the start a breach of the special contract respecting a material part thereof and further admits that he has no right of recovery under the special contract, because substantial performance of the material terms of the contract is a condition precedent to recovery under it. Secondly, he recognizes that his misdirected performance may have damaged the other party. Thirdly, in such posture of the relationship between the contractor and the other party, the burden of proof lies upon the contractor to show by the fair preponderance of the evidence that his misdirected or deficient work has resulted in a benefit to the other party. See also, Arsenault v. Brown Co., 1922, 122 Me. 52, 118 A. 738; Skowhegan Water Company v. Skowhegan Village Corporation, supra. Fourthly, as a condition precedent to his right to recover anything, the contractor must make out a prima facie case that the fair market value of his defective product shows that the result of his labor was of some value to the other party.

■ The burden is upon the plaintiff to show that the trustee should be charged. Krogman v. Rice Bros. Co., 1922, 241 Mass. 295, 135 N.E. 161. The plaintiff contends that the doctrine of "unconscionable and unjust enrichment" underlying the availability of remedial action under "quantum meruit" concepts should be made applicable in this case, subjecting the principal defendant's credits under the retainage clause to trustee attachment. We disagree. The retainage clause is inserted into building contracts for the very protection of the owner (the usual trustee—but, in this case, Ford, the primary sub-contractor) to avoid the inequity which would arise from non-performance by an unscrupulous contractor. Such a clause serves as a real inducement to the contractor to fulfill faithfully the terms of his contractual undertaking. What incentive, otherwise, would he have to live up to his agreement, if in any event he may collect for such performance as he tenders, free from the inhibiting pressures which the reservation-of-final-payment clause, construed as a condition precedent, puts upon him? It would seem that the equities favor the party for whose benefit the architect's certificate of approval of the work was made a condition precedent to the final disbursement on the contract. How else could he protect himself against delaying tactics in correcting faulty performance?

In the instant case, the record fails to show the acceptance of Hamilton's work by Ford at the time of service of the trustee process. There is no evidence that Hamilton has attempted to secure approval of either job, nor that the architects are refusing to issue the certificate in bad faith. The plaintiff has no greater rights than Hamilton has and Hamilton's right of action in "quantum meruit" depends on the contingency that, absent the architect's certificate of approval, Hamilton can prove that the work done would be of some benefit to the trustee. Hamilton's defective performance, if such be the case, is chargeable to Ford, the trustee, so far as the prime contractor, Merrill, is concerned, the prime contractor being ultimately responsible to the owners. Thus, even with equitable considerations in mind, there is no valid reason why, in a construction contract, we should depart from the intended purpose of the parties that the retainage payment clause, which makes the architect's certificate of approval a condition precedent to the dueness of the final payment, establishes, until compliance therewith, a contingent liability only. In the absence of such approval, except in circumstances of fraud, bad faith or mistake, there is no debt due absolutely and any trustee process prior thereto is premature.

The entry will be

*Appeal denied.*

All Justices concurring.

WEBBER, J., did not sit.